MERCIE W. EDWARDS, EXECUTRIX (ESTATE OF ROSA LEE HARRIS) *v.* GRACE HOSPITAL SOCIETY.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, Js.

Argued October 5, 1943—decided February 24, 1944.

*Cyril Coleman,* for the appellant (defendant).

*George W. Crawford,* for the appellee (plaintiff).

ELLS, J.   Rosa Harris was a patient in Grace Hospital at New Haven.   During convalescence from an appendectomy she jumped from the window of a semi-private room and suffered injuries from which she died. The complaint alleged that the sole cause of the death was the corporate neglect of the defendant in the performance of its duty to and of its agreements with Mrs. Harris in certain specified respects.   The defendant denied negligence and pleaded as a special defense that it was a charitable corporation without capital stock whose members derive no profit from its operation.   The plaintiff in her reply admitted the special defense, and alleged that the defendant carried contracts of insurance indemnifying it against liability

to its patients for its corporate negligence and for the torts of its servants and agents in the conduct of the hospital; that by reason of such contracts of insurance a judgment for the plaintiff would not deplete the charitable trust funds of the defendant; and that the plaintiff would limit any judgment which she might recover, and the satisfaction of such judgment, to the indemnity procurable under the contracts of insurance. The defendant demurred on the ground that the fact of insurance did not impair the validity of the charitable immunity available to the defendant. The trial court treated the demurrer as raising the basic question of liability based on corporate neglect as distinguished from immunity for the neglect of employees and overruled the demurrer. The case was tried to a jury and a verdict was rendered for the plaintiff for $4500 damages. The defendant moved that it be set aside as against the law and the evidence, and has appealed from a denial of the motion and from the judgment.

The acts of so-called corporate negligence alleged in the complaint are that the defendant failed to provide such a number of nurses, servants and employees in that part of the hospital to which it assigned the patient "as were able to discharge with reasonable adequacy and competency the duties of such care, treatment, oversight and supervision of the plaintiff's decedent as were then and there reasonably necessary for her safety and welfare"; that it failed to furnish in that portion of the hospital to which it assigned the patient such proper facilities and safeguards as were reasonably necessary for her care and safety; and that it failed to adopt and enforce a policy or practice whereby the patient received adequate care and oversight in accordance with its engagements and in accordance with such care and oversight as are ordinarily provided by similar hospitals in the defendant's vicin-

ity.  The defendant claims that there was no evidence upon which the jury could reasonably have found that the corporation was negligent in any one of these respects.

There was evidence from which the jury could reasonably have found the following facts:  The operation was performed at about midnight on January 18, 1938, by the patient's own surgeon, who was assisted by her personal physician.  The appendix was found to be gangrenous, ruptured and abscessed.  The patient's convalescence was normal and uneventful, and so impressed her doctors and the hospital staff.  On January 24, within half an hour after receiving nursing care and attention, bath and breakfast, without warning she threw herself out of the window of her room, which was not barred or screened.  The psychosis which apparently brought about her insane act is uncommon, but is of sufficiently frequent occurrence in such cases that it is to be reasonably anticipated and guarded against.  One of the outstanding characteristics is a desire to get out of bed, if in bed, or out of a room, if confined in one.  It is also well-recognized by the medical profession that this condition may occur with or without warning, and as long after the operation as was the case here.  All the evidence in the case was to the effect that there was no advance warning of the psychosis.

We decide the case on the basis of the claimed error in the refusal to set aside the verdict.  If there was no evidence of corporate negligence reasonably warranting a verdict for the plaintiff, it will be unnecessary to decide the defendant's claim of immunity from tort liability for corporate neglect because it is an eleemosynary corporation.  The words "corporate neglect" as used in this case must necessarily mean neglect of the officers or managing directors who constituted the

governing board of the corporation, as distinguished from the negligence of its ordinary employees, such as its superintendent, supervisors, physicians and nurses. If there was neglect in any of the respects alleged, but it was negligence of the employees, there is no liability on the part of the corporation. The defendant is a charitable corporation and is not liable for the negligence of employees whom it has selected with due care. *Hearns* v. *Waterbury Hospital,* 66 Conn. 98, 33 Atl. 595; *Cashman* v. *Meriden Hospital,* 117 Conn. 585, 169 Atl. 915.

This being a negligence action the plaintiff must establish a duty on the part of the defendant, and a violation of that duty which was a proximate cause of the injury. The basis of the plaintiff's claim is that a temporary delirium or psychosis such as that experienced by the patient, although uncommon, happens with such frequency that good medical practice would be on guard against it, that is, would take reasonable precautions against what is to be reasonably anticipated. The plaintiff's evidence is that the patient's own private physician made arrangements with the hospital, not that it should have entire charge of her case and provide its own surgical and medical attention, but that it would furnish all hospital services except actual medical attendance. Her own private surgeon performed the operation, assisted by her own physician, and both attended her after the operation, visiting her at least once a day. At no time did they observe symptoms of mental disturbance, nor did they have any reason to believe there was any mental element in the case. At no time during the convalescence did they suggest to the defendant or its employees any change in the course of treatment she was receiving, or the taking of any further precaution. Additional nursing care or the use of a room with barred windows

was never suggested to the hospital by these physicians. The plaintiff, the daughter of the patient, was herself a trained nurse who had cared for at least a hundred such cases. The patient was also a trained nurse of wide experience. Neither one ever suggested to the hospital the need of additional nurses, or the use of further precaution. Under these circumstances it is difficult to find a duty owed by the hospital such as the plaintiff claims. Be this as it may, we pass to a consideration whether there is evidence that the defendant violated its claimed duty by not providing sufficient nurses, a barred window and other similar precautions, and failed to provide adequate routine as agreed and as provided by similar hospitals and as was reasonably necessary under the circumstances.

As to the first claim the point at issue is the situation on the morning of January 24, when the patient jumped from the window. There was evidence that on some days before the fall the plaintiff observed that her mother did not have sufficient nursing care. There was no proof as alleged that there was an insufficient number of nurses available. The plaintiff introduced no evidence as to the number of nurses on duty. The defendant's expert evidence was that there was an adequate number. The most that the evidence tended to show was that some employee may have improperly allocated the available nurses on the occasions complained of before the fall, or that the nurses actually allocated were inattentive. That is far from proving that the corporation or its board of directors pursued a policy of understaffing its hospital. Passing now to the morning of the accident, we find that the only evidence is the hospital record, introduced by the plaintiff, and the testimony of two of the defendant's nurses. Apart from their testimony that there was an adequate number of nurses on duty in accord with

standard practice, the only evidence left is the hospital record. It shows that the decedent had received nursing care and attention, bath and breakfast, within a half hour of the time when she threw herself out of the window. There is no claim, and no evidence, that reasonable care under the circumstances required the defendant to keep a nurse in this patient's room constantly. There was no evidence that at the time of the fall there was an inadequate number of nurses on duty and that such lack caused the injury complained of.

The second claim of inadequate precaution is based principally on the fact that the window was not barred or screened and was frequently left open at the bottom for ventilation. There was no evidence that the hospital did not contain rooms properly equipped and barred to take care of patients who became insane; there was no evidence that the governing body of the hospital had not made adequate provision to prevent a patient suffering from such a condition as she was from jumping out of a window; and, so far as appears, any negligence in that regard was that of the employees of the hospital in failing to use means provided for such a purpose. There is no evidence that similar hospitals similarly located provide bars at the window or other similar precautionary devices for the protection of patients enjoying such an apparently uneventful convalescence. All the evidence was to the contrary, and to the effect that the precautions indicated were merely reasonable supervision of the patient by nurses and doctors. The patient's own witness, her doctor, testified as follows: "Q. What you do is you check in on the patient several times or once a day and have the nurses check in every so often to see if everything is all right, isn't that so? A. That is the usual procedure. Q. And until something is called to

your attention that restraint is necessary you naturally withhold restraining the patient, don't you? A. That is right."

The evidence is that the hospital routine was in accord with standard practices obtaining in similar hospitals. The plaintiff produced no evidence to the contrary, and although the jury may have disbelieved the defendant's witnesses it was not entitled to conclude that the opposite was true. *Walkinshaw* v. *O'Brien,* 130 Conn. 151, 153, 32 Atl. (2d) 639.

We conclude that there was no evidence upon which the jury could reasonably ·have found that the corporation was negligent. Finding error in the denial of the motion to set the verdict aside upon this ground, we cannot direct the entry of a verdict for the defendant, but must order a new trial. *Koops* v. *Gregg,* 130 Conn. 185, 195, 32 Atl. (2d) 653; *Fay* v. *Hartford & Springfield St. Ry. Co.,* 81 Conn. 578, 71 Atl. 734.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion MALTBIE, C. J., JENNINGS and DICKENSON, Js., concurred; BROWN, J., concurred in the result.