ALFRED MARCHLEWSKI v. A. VICTOR CASELLA

BALDWIN, O'SULLIVAN, WYNNE, DALY and SHANNON, Js.

Argued June 2—decided June 23, 1954

*Alexander Winnick,* with whom, on the brief, were *Milton Rice, Alvin M. Murray, Gilbert H. Winnick* and *Thomas F. Minuto,* for the appellant (plaintiff).

*Bradley B. Bates,* for the appellee (defendant).

O'SULLIVAN, J. This is an action for malpractice, to recover damages for injuries to the plaintiff's wrist claimed to have been caused by the negligent and unskilful conduct of the defendant in applying diathermic treatment. Upon the trial the jury returned a defendant's verdict, which the plaintiff moved to set aside. The court denied the motion and the plaintiff has appealed from the judgment rendered on the verdict. Of the many questions raised in his assignments of error, only two have been argued orally and in his brief. The others must, therefore, be treated as abandoned. *Freund* v. *Burns,* 131 Conn. 380, 386, 40 A.2d 754; Maltbie, Conn. App. Proc., § 165. Both questions which have been pressed deal with the court's charge to the jury.

The plaintiff offered evidence to prove the following facts: The defendant is a physician engaged in the general practice of medicine in Naugatuck. On August 28, 1949, the plaintiff sprained his right

wrist and on the next day went to the defendant about the injury. After examining the wrist, the defendant first massaged it and then applied an ace bandage. The plaintiff returned to the defendant's office on September 3, 1949. On that occasion, the defendant decided to apply special treatment to the wrist. For that purpose he took the plaintiff to a room located in the rear of the large house which the defendant used both as his offices and as his home. In this room, which was about fifteen feet from his private office, was a diathermy machine. After having his patient sit down on a stool, the defendant put around the plaintiff's wrist and forearm rubber cuffs which were connected by cables to the machine. The defendant did not apply any padding or gauze to the plaintiff's skin where it was in contact with the cuffs. After first turning some dials on the machine, the defendant switched it on. He then left the room without giving the plaintiff any instructions as to the cuffs or the machine.

About fifteen minutes later, the plaintiff, feeling a burning sensation in his wrist, called loudly for the defendant but received no response. The plaintiff thereafter continued to call but it was not until another fifteen minutes had passed that the defendant came to the treatment room and turned the machine off. Upon removal of the cuffs the plaintiff's wrist was found to be reddened. Subsequently the wrist became blistered, and although treated by the defendant until February, 1950, it failed to heal properly. The burn has left a permanent scar which may require surgery, and the strength of the hand has lessened. It will not be necessary to mention the defendant's claims of proof other than to observe that in the vital instances they were exactly contrary to those of the plaintiff.

The court charged the jury that while a physician must exercise reasonable care, skill and diligence, "the law does not exact from him the utmost degree of care and skill obtainable or known to the profession." It is this quoted statement which the plaintiff attacks. His point is that the statement was erroneous since it improperly limited the degree of care required of the defendant by law. More particularly, the plaintiff asserts that reasonable care may, under certain circumstances, demand a very high degree of care if one is to escape liability.

To support his claim the plaintiff cites *Geoghegan* v. *G. Fox & Co.,* 104 Conn. 129, 137, 132 A. 408, *Tower* v. *Camp,* 103 Conn. 41, 47, 130 A. 86, and *Walters* v. *Hansen,* 99 Conn. 680, 682, 122 A. 564. In each of those cases the principle is iterated that reasonable care may, in a given situation, mean great or extraordinary care. These three cases, however, and those in which similar statements can be found, are what the legal profession commonly calls "ordinary negligence actions." Two of them were brought to recover for personal injuries alleged to have been caused by the negligent operation of the defendant's automobile and the other, by the negligence of the defendant's agent in colliding with the plaintiff, who was walking along an aisle in the defendant's store. The principle referred to in these cases is inapt to an action for malpractice.

Before making the statement under attack, the court had charged that the duty of the defendant in his capacity as a physician was to exercise reasonable care, skill and diligence in treating the plaintiff as a patient, and that this duty was met if the defendant exercised that degree of skill and care which physicians in the same general neighborhood and in the same general line of practice ordinarily

have and exercise in like cases. This instruction conformed to our law. *Sheridan* v. *Quarrier,* 127 Conn. 279, 281, 16 A.2d 479; *Geraty* v. *Kaufman,* 115 Conn. 563, 571, 162 A. 33; *Force* v. *Gregory,* 63 Conn. 167, 169, 27 A. 1116; *Landon* v. *Humphrey,* 9 Conn. 209, 216. The court's so-called limitation upon the defendant's duty which the plaintiff criticizes was nothing more than a partial explanation of what the court had previously said. If the defendant's treatment of the plaintiff was properly to be tested by the degree of care and skill exercised by physicians in the same general neighborhood and in the same general line of practice, it necessarily follows that the defendant was not required to use a degree of care commensurate with that exercised by those classified as experts. A country general practitioner should not be expected to use the high degree of skill possessed by eminent physicians living in large cities and specializing in various branches of medicine. *Geraty* v. *Kaufman,* supra, 573. The court was correct in its instruction. 41 Am. Jur. 201.

The other assignment of error pressed by the plaintiff deals with the court's refusal to charge the jury in a particular requested by him. The request ran to the effect that if the diathermy machine was equipped with an alarm signal which could be set to give the patient warning of the end of the treatment and if "the exercise of reasonable care, skill and diligence required, that such alarm signal should be set and [if] the defendant failed to set said alarm signal, then you may find the defendant liable for malpractice." In the ordinary action for negligence, the jury require no evidence as to the degree of care a defendant should use under the circumstances. This does not apply, however, to an action for malpractice. Since the members of the jury are laymen,

they cannot be expected to know the requirements for proper medical treatment in the usual case. The evidence of experts is ordinarily necessary. *Haliburton* v. *General Hospital Society,* 133 Conn. 61, 65, 48 A.2d 261; *Capolupo* v. *Wills,* 116 Conn. 13, 17, 163 A. 454; *Slimak* v. *Foster,* 106 Conn. 366, 368, 138 A. 153. The only exception is to be found in those instances where there is manifest such an obviously gross want of care or skill as to afford, of itself, an almost conclusive inference of lack of care or skill and thus to dispense with the necessity of testimony by expert witnesses. *Chubb* v. *Holmes,* 111 Conn. 482, 486, 150 A. 516. The case at bar does not fall within the exception. Since the plaintiff failed to offer any expert evidence on the subject, the court was warranted in refusing to submit the request to the jury.

The plaintiff's attempt to utilize the assignment of error under discussion as presenting an evidential question concerning the credibility of the defendant is not possible under the record.

There is no error.

In this opinion the other judges concurred.