## PAUL DECHO *v.* NED SHUTKIN

O'SULLIVAN, WYNNE, DALY, TROLAND and COVELLO, Js.

Argued October 3—decided December 5, 1956

*Cyril Coleman,* for the appellant (defendant).

*Roslyn Z. P. Montlick,* for the appellee (plaintiff).

O'SULLIVAN, J. This action for malpractice against an orthopedic surgeon resulted in a plaintiff's verdict. After it had been accepted by the court, the defendant moved that judgment be rendered in his favor notwithstanding the verdict or, as an alternative, that the verdict be set aside. The motion was denied, and the defendant has appealed from the

judgment rendered on the verdict. The sole question raised on the appeal is whether there was sufficient expert evidence of malpractice to justify the submission of the case to the jury.

Viewed in the light most favorable to the plaintiff, the evidence was ample to establish the following facts: The plaintiff is a large man, weighing about 240 pounds and being well over six feet tall. While at work in a foundry on May 8, 1953, during the night shift, and while attempting to lift a very heavy piece of metal from a mold, he wrenched his back. The injury was so severe and the accompanying pain so agonizing that he was unable to straighten up. He was taken, in a stooped position, to the first-aid station, where Dr. Joseph A. Chobian examined him and then had him transported by automobile to his home. Upon arriving there, the plaintiff was helped into the house. He was able to walk through the kitchen but, on reaching the parlor, collapsed to his knees. His agony was so intense that he could not get up; he remained on the parlor floor all night. On the following morning, while still in great pain, he was taken to the local hospital, where he was put to bed and given demerol, a drug, which lessened his pain. Because of the nature of the injury, Dr. Chobian requested the defendant to enter the case as an orthopedic consultant. The latter agreed to do so and came to the hospital that same afternoon.

The defendant found the plaintiff lying in bed in an awkward position, which he assumed was part of the patient's clinical picture. The plaintiff was then free from pain as long as he lay absolutely still. As the result of an examination, the defendant diagnosed the plaintiff's injury as a ruptured intervertebral disc. This is a condition where a por-

tion of the disc is extruded from its normal position between two adjoining vertebrae and impinges on adjacent nerves so as to cause pain in the back and leg. Having reached his diagnosis, the defendant advised that the plaintiff be put in traction, a procedure in which weights are suspended at the foot of the bed in such a manner as to exert, through the use of adhesive strips attached to the paining leg of the patient, a pull on his spine. The object of this type of treatment is by extension to cause the intervertebral space to increase in size in order that the extruded disc may slip back into its proper position.

Before proceeding with the treatment, the defendant was told by the plaintiff that he was allergic to adhesive tape. Dr. Chobian knew this to be so and made the same observation. The defendant replied that in lieu of the conventional adhesive tape he would use moleskin, a soft cloth-like substance with an adhesive on it. To this the plaintiff said, "It's still tape, regardless of whatever it is, it's still tape." The defendant then instructed the nurse to shave the plaintiff's right leg, but without waiting for her to do so he applied moleskin in two long strips along the sides of the leg. He then told the nurse to remove the moleskin if the plaintiff felt any itching or burning sensations.

Sometime during the night of the same day, the plaintiff, experiencing pain and discomfort in the leg, complained to the nurse, but she advised him to wait until the doctor came. The next morning, the defendant visited the plaintiff, who related his experience of the preceding night. The defendant, nevertheless, applied more traction to the leg and tightened the moleskin, saying to the nurse that she should take it off if the plaintiff had any further

trouble with it. Later on during that day, the pain in the leg became so intense that the plaintiff asked the nurse to remove the moleskin. She tried to but had to stop because she became nauseated. The plaintiff then completed the job himself, but in doing so he took his own skin off, leaving his leg looking like raw meat. Dr. Chobian was summoned and treated the leg until the plaintiff was released from the hospital on May 23. During this period of treatment the leg remained raw looking and caused the plaintiff considerable pain. For a few days after traction was stopped, the plaintiff had some pain in his back. Then the pain ceased and when he left the hospital his back "felt fine."

Subsequent to the plaintiff's discharge, his leg was treated for three months by a dermatologist. When the leg had become healed, it turned dark brown in color for a while. The plaintiff returned to work in June for a week and then started working regularly in July. In September he had another painful episode with his back. This required the removal of the disc. The operation was performed by Dr. L. M. Davey, a neurosurgeon.

To impose liability, it was necessary for the jury to reach the conclusion that the defendant, in doing what he did, as disclosed by the facts recited above, failed to use the care, skill and diligence ordinarily exercised by other surgeons engaged in the same line of practice in the same general neighborhood. *Horton* v. *Vickers,* 142 Conn. 105, 113, 111 A.2d 675. In the run-of-the-mill action for negligence such as, for example, one brought to recover damages for injuries suffered in an automobile accident, the jury do not need evidence as to the degree of care which the operator should have used under the circumstances. It is assumed that from their own experi-

ences they are fully aware of the necessary degree of care. But the situation is far different in actions for malpractice. The members of the jury, as well as the presiding judge in cases tried to the court, are laymen as to medical and surgical methods, and they cannot be expected to know the demands of proper treatment. For this reason expert testimony is always necessary to support recovery except in one instance, and that has no present application. *Marchlewski* v. *Casella,* 141 Conn. 377, 381, 106 A.2d 466.

The expert testimony on which the plaintiff relies in the case at bar was that of Dr. Davey. He qualified as one who was familiar with the care, skill and diligence exercised by orthopedic surgeons in New Haven and its environs in the treatment of back injuries. It is true that, in support of a plaintiff's verdict in malpractice actions, something more is required than a snippet of testimony, taken out of context, to establish a physician's or surgeon's departure from proper treatment of his patient. The trier cannot "cull statements from the testimony of an expert which in and of themselves are not complete but are dependent upon other testimony." *Snyder* v. *Pantaleo,* 143 Conn. 290, 295, 122 A.2d 21. An examination of the appendices shows that this was not the situation here.

A vital part of Dr. Davey's testimony may be summarized in this fashion: Traction is an approved treatment of back injuries of the type which the plaintiff had sustained; alternative treatments are surgery, manipulation, and absolute bed rest under sedation, of which the last mentioned is the most conservative; if the patient suffers severe pain, it is good practice to put him in traction even at the risk of his developing dermatitis from a known allergy

to adhesive, since it might be better to chance dermatitis if bed rest or manipulation could not be tolerated and if surgery, with its attendant risk of death, was not indicated; if, on the other hand, the patient is not in severe pain, it would not be proper treatment to apply traction with the attendant danger of dermatitis.

The jury, then, were confronted with the necessity of determining whether the plaintiff was or was not in severe pain when the defendant decided to apply traction. If they found, as they had the right to do on the evidence, that the plaintiff was suffering no pain at the time, they would be justified in accepting and using the expert testimony of Dr. Davey that traction, in the absence of pain on the plaintiff's part and in view of his known allergy to adhesive in any form, was not in accord with the approved practice pursued by orthopedic surgeons in the same general neighborhood.

There is no error.

In this opinion the other judges concurred.