HELEN H. McDERMOTT *v.* ST. MARY'S HOSPITAL
CORPORATION

HELEN H. McDERMOTT *v.* EVAN J. WHALLEY

HELEN H. McDERMOTT *v.* FREDERICK C. LABRECQUE

O'SULLIVAN, C. J., BALDWIN, WYNNE, DALY and KING, Js.

Argued May 9—decided June 12, 1957

*Herman D. Silberberg* and *Emanuel Margolis,* with whom, on the brief, were *Louis A. Silverstein* and *Carl R. Ajello,* for the appellant (plaintiff).

*Cyril Coleman,* for the appellees (defendants).

WYNNE, J. In these actions the plaintiff sought damages for burns she sustained while a patient in St. Mary's Hospital in Waterbury. She brought three suits, one against the hospital corporation and one against each of two doctors for malpractice. The cases were tried together. When the plaintiff rested, each defendant moved for a directed verdict. The motions were granted, and a defendant's verdict was returned in each case. Motions by the plaintiff that the verdicts be set aside were denied. The

plaintiff has appealed from the judgments rendered, and by stipulation it was ordered that the actions be combined for the purpose of appeal.

There are several questions raised on these appeals. While they are comprehended in the general assignment that the court erred in directing verdicts for the defendants and in not afterward setting the verdicts aside, the claim is made in each case that there was sufficient evidence to go to the jury. As to the defendant hospital, it is claimed that the evidence disclosed corporate neglect in the manner in which hot-water bottles were used and not checked to determine whether untoward results were ensuing. In addition, it is claimed that the doctrine of charitable immunity from liability for the negligence of servants and agents should be abrogated. It is claimed as to each of the defendant doctors that the facts established were evidence of neglect constituting malpractice and that the issues should have been submitted to the jury.

The evidence produced by the plaintiff fairly discloses the following facts: On January 17, 1953, the plaintiff and her husband consulted Dr. Evan J. Whalley, one of the defendants. He advised them that the plaintiff was pregnant and that the date of delivery would be July 13, 1953. It was the plaintiff's first pregnancy. Dr. Whalley saw her about once a month until June 30, 1953. During this period her progress was uneventful. On June 30, after examination, Dr. Whalley determined that the time of labor was approaching. He prescribed castor oil, which the plaintiff took twice. On the evening of July 2, she reported no progress and was advised to enter St. Mary's Hospital. She did so the next afternoon. On the morning of July 4, labor pains not having started, Dr. Whalley authorized her dis-

charge from the hospital. Shortly after her return home, she began to bleed. She re-entered the hospital under the care of Dr. Frederick C. LaBrecque, who is a defendant. He is an obstetrician and had been left in charge of the plaintiff's case by Dr. Whalley, who had gone out of town. On the afternoon of July 4 the plaintiff went into labor. The baby was in a position requiring a major obstetrical procedure, and the cervix had to be enlarged by an incision. At 9:33 p.m. a normal baby was born. The plaintiff's uterus did not close down as it should have shortly after delivery. She began to bleed profusely and went into a state of deep shock with collapse of circulation. She had no pulse or respiration and only a faint heartbeat. Heroic treatment was immediately instituted by Dr. LaBrecque to save her life. He called for her blood to be typed and cross-matched by laboratory technicians. He started intravenous injections into both her arms and sutured the incision in the cervix. He massaged the fundus of the uterus to get it to contract. He pumped blood into the plaintiff's veins and had the attending anesthetist administer oxygen. He called for blankets and hot-water bottles. The plaintiff was put in Trendelenburg position, which means that she was secured on a table, her feet were elevated and her head was lowered until it was about eighteen inches from the floor. This was to promote the flow of blood to the vital centers. Hot-water bottles were filled by a nurse with water from the tap. The bottles were closed with the locking device on each. Four of the bottles, wrapped in lap stockings, were placed about the plaintiff's legs, which were protected by a cotton blanket, the legs themselves being encased in lap stockings. More blankets were laid on top of the hot-water bottles and wrapped around the plain-

tiff. From time to time Dr. LaBrecque felt of the plaintiff's legs to see if circulation was starting and he noticed no excessive heat. After about two hours the plaintiff began to respond to treatment and in about three hours was able to be taken to her room. Dr. LaBrecque remained in attendance until about 1:30 a.m., which was somewhat later.

On the morning of July 6 Dr. Whalley and Dr. LaBrecque examined blisters and redness on the plaintiff's legs and concluded that they were caused by burns from the hot-water bottles. Dr. Whalley assumed the care of the burns while the plaintiff was in the hospital and kept in touch with her by telephone after she had returned home. On July 26 the plaintiff developed severe pain in her legs and was taken by her husband to Dr. Cushman in Woodbury for treatment. Shortly thereafter she was returned to St. Mary's Hospital, where she was under the care of Dr. Charles H. Audet, chief of the surgical staff, and was eventually discharged.

The basis of the actions against the hospital and the two defendant doctors concerns what occurred in the hospital on the night when the plaintiff gave birth to her child and complications arose which endangered her life. The claim against the hospital is that there was negligence on the part of nurses and that a hospital such as St. Mary's is no longer entitled to charitable immunity. The claim against Dr. LaBrecque is based on the theory that he was the attending physician, that he was personally responsible for the burns and that the action of any nurse during the time in question was one for which he was responsible. The claim against Dr. Whalley is based on professional neglect of his patient in permitting her to be put into the hospital without his attendance and on his treatment and

care of the burns up to the time she became a patient of Dr. Cushman and eventually re-entered the hospital under the care of Dr. Audet.

It was conceded that the defendant hospital is a charitable corporation and that there was no evidence of negligence in the hiring of its employees. There was a general allegation against this defendant of corporate neglect in failing to provide adequate hot-water bottles and apparatus and to inspect them. There was no evidence that the hot-water bottles and apparatus were, defective or that an inspection would have revealed any defect. There was no evidence that similar hospitals similarly located provide mechanical equipment for testing or controlling the temperature of water used in hot-water bottles. There was no evidence that similar hospitals used a method of securing bottles different from that used here, as described by Dr. LaBrecque. On this general aspect of the case, *Edwards* v. *Grace Hospital Society,* 130 Conn. 568, 574, 36 A.2d 273, is controlling. Even if negligence on the part of some nurse in placing or wrapping the hot-water bottles were conceded, it would not avail the plaintiff unless we reversed a long line of cases upholding the defense of charitable immunity. As late as 1955 an effort was made in the legislature to change the law, and the bill in question was reported unfavorably and rejected. S. B. 597, 1955 Sess.; Conn. S. Jour., 1955 Sess., pp. 550, 563. The rejection by the legislature of a bill designed to overrule a judicial precedent by legislative enactment furnishes strong reason for the court's refusal to reverse the precedent. *Herald Publishing Co.* v. *Bill,* 142 Conn. 53, 63, 111 A.2d 4; see *Cristini* v. *Griffin Hospital,* 134 Conn. 282, 285, 57 A.2d 262; *Cohen* v. *General Hospital Society,* 113 Conn. 188, 190, 154 A. 435. The

New York Court of Appeals has recently handed down a case abolishing the principle of charitable immunity as applied to hospitals. *Bing* v. *Thunig,* 2 N.Y.2d 656, 667, 143 N.E.2d 3; for a further discussion of charitable immunity, see note, 25 A.L.R.2d 29. The doctrine in this state is of wide application, applying as it does to other types of institutions, such as churches. At this time we are not prepared to change the law of this state by over-ruling pertinent cases.

We next take up the case against Dr. Whalley. In an action brought to recover damages for injuries suffered in an automobile accident, the jury do not need evidence as to the degree of care which the operator should have used under the circumstances. Members of a jury are laymen as to medical and surgical methods, however, and they cannot be expected to know what constitutes proper treatment. The presiding judge has to decide whether questions of law only have been developed in a given situation. *Decho* v. *Shutkin,* 144 Conn. 102, 105, 106, 127 A.2d 618. The only exception to the rule that evidence of experts is necessary is in those instances where there is manifest such a gross want of care or skill as to afford an almost conclusive inference of lack of care or skill. *Marchlewski* v. *Casella,* 141 Conn. 377, 382, 106 A.2d 466. There was no basis in the evidence in the case against Dr. Whalley for such a claim as that.

As to Dr. LaBrecque, it seems clear that he was faced with an emergency, that he assumed charge and that through his efforts and those of the hospital staff under his direction in that brief time in the delivery room the plaintiff's life was saved. We fail to see that there was evidence of any neglect on his part, much less gross neglect. The doctrine of

res ipsa loquitur is not applicable. *Chubb* v. *Holmes,* 111 Conn. 482, 489, 150 A. 516. Dr. LaBrecque testified that he knew of the possibility of a burn to a patient in the condition of the plaintiff by the use of hot-water bottles but that the application of heat was "a calculated risk."

There is no error.

In this opinion BALDWIN, DALY and KING, Js. concurred.

O'SULLIVAN, C. J. (dissenting in part). I disagree with that part of the opinion which perpetuates the rule of nonliability of charitable hospitals, since the rule is out of step with modern concepts of justice. *President & Directors of Georgetown College* v. *Hughes,* 130 F.2d 810, 827; *Ray* v. *Tucson Medical Center,* 72 Ariz. 22, 36, 230 P.2d 220; *Silva* v. *Providence Hospital,* 14 Cal. 2d 762, 776, 97 P.2d 798; *Haynes* v. *Presbyterian Hospital Assn.,* 241 Iowa 1269, 1274, 45 N.W.2d 151; *Noel* v. *Menninger Foundation,* 175 Kan. 751, 763, 267 P.2d 934; *Mississippi Baptist Hospital* v. *Holmes,* 214 Miss. 906, 940, 55 So. 2d 142; *Bing* v. *Thunig,* 2 N.Y.2d 656, 667, 143 N.E.2d 3; *Avellone* v. *St. John's Hospital,* 165 Ohio St. 467, 477, 135 N.E.2d 410; *Pierce* v. *Yakima Valley Memorial Hospital Assn.,* 43 Wash. 2d 162, 180, 260 P.2d 765; 4 Scott, Trusts (2d Ed.) § 402; 2A Bogert, Trusts & Trustees, § 401; Prosser, Torts (2d Ed.) p. 786; note, 25 A.L.R.2d 29.