FRED J. BROCKETT, JR. *v.* RAYMOND C. ABBE

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 13-6301-1806

Argued June 1—decided August 25, 1964

*Anthony A. Tomaro,* of Hartford, for the appellant (plaintiff).

*Francis J. Fahey,* of Thompsonville, for the appellee (defendant).

JACOBS, J. The plaintiff is a duly licensed veterinarian who, under § 20-197 of the General Statutes, "holds himself out as being able to diagnose, administer biologics for, treat, operate or prescribe for any animal . . . , and who either offers or undertakes, by any means or methods, to diagnose, administer biologics for, treat, operate or prescribe for any animal." We are concerned in this case only with the plaintiff's appeal from a judgment

entered against him on the defendant's counter-claim.

The court's original finding contained but twelve paragraphs. It corrected the finding by adding to it seventeen additional paragraphs. The findings, as corrected by the court and with such additional corrections as the plaintiff is entitled to, develop a factual background which may be summarized as follows: The defendant was a dairy farmer for about forty years. He conducted his business at his farm on Abbe Road, in Hazardville, in this state. In October, 1962, his herd consisted of some fifty-five head, "all registered Holstein." For personal and private reasons, the defendant announced through a specially printed catalog, exhibit 1, that he planned to hold a dispersal sale of his entire herd "at his farm on Thursday, October 25, 1962 at 11:00 a.m. . . . in conformance with the Sales Practices and Procedures as approved and recommended by the Purebred Cattle Association." One of the requirements of the association, among others, was that a pregnancy test of all bred animals be made by a veterinarian, preferably one or two days prior to the date of the sale. On October 24, one day before the sale, the plaintiff was engaged by the defendant to perform a pregnancy test on the bred cattle, including an examination of "Sherwin Delight Lochinvar (Twin) 4799854 Cat. No. 39," as the animal which is the subject of this controversy is described in the brochure. One of the tests to determine the existence or absence of pregnancy is the so-called "punch test," technically known as "abdominal ballottement," which consists of punching the cow lightly on the right-hand side of her abdomen with a loosely made fist. This procedure may at certain stages in the pregnancy enable one to feel the calf or fetus. The "punch test" is widely used by farmers and stockmen or people in the

trade; it is, admittedly, a superficial means of testing for pregnancy and is not considered reliable either by the veterinary profession or by people in the trade. The rectal test is the only known reliable method of determining pregnancy in a cow; it is the method commonly used and accepted by the profession. The plaintiff performed two rectal examinations on the cow on October 24; he reported that "he could find no calf in this animal, there was a pus condition [but] he could find no calf." Based upon the plaintiff's diagnosis and report that the animal was "open, pus case, sell as is," she brought a price of $170 at the dispersal sale. On November 15, twenty-two days after the cow had been examined, she was delivered of a heifer. Had "Sherwin Delight Lochinvar" been sold as a pregnant cow, she would have brought $550 at the sale.

The negligence charged in the counterclaim is predicated upon the plaintiff's erroneous diagnosis of the condition of the cow. No expert evidence was offered by the defendant. To obtain a better understanding of the basis of the trial court's decision in this case, we have consulted the memorandum of decision, as we have a right to do. See *Horton* v. *Vickers,* 142 Conn. 105, 112. A perusal of the memorandum indicates that the trial court concluded that the "plaintiff's particular method of examination was done properly but that this method was not sufficient under the circumstances then and there prevailing. This insufficiency was so manifest as to make an exception to the generally accepted rule of proof in these cases." The court then added: "The doctor should have used the 'punching' method of examination after a doubt had been expressed as a result of his first examination." In other words, the court held that expert evidence was not necessary because the lack or want of care or skill was so manifest as to afford an almost conclusive infer-

ence of negligence to warrant an exception to the general rule.[1] The court stated that "[t]he doctrine of res ipsa loquitur can be applied."[2]  See such cases as *Marchlewski* v. *Casella,* 141 Conn. 377, 381; *Decho* v. *Shutkin,* 144 Conn. 102, 106; *McDermott* v. *St. Mary's Hospital Corporation,* 144 Conn. 417, 423.

The question presented to us for review is whether, on the facts of this case, as we have recited them, the court was correct in applying the doctrine of res ipsa loquitur.  We hold that it was not.  "The doctrine . . . is not applicable . . . in cases involving . . . diagnosis and scientific treatment."  70 C.J.S. 992, Physicians and Surgeons, § 62(a). "Traditionally most courts have said that the doctrine does not apply when the facts show no more than . . . a mistake in diagnosis . . . ."  Louisell & Williams, Trial of Medical Malpractice Cases (1960 Ed.) § 14.06, p. 437.  "Since a physician or surgeon normally undertakes only to exercise the

---

[1] This exception has generally been applied sparingly.  See 2 Harper & James, Torts § 17.1, p. 966.  "However, despite the perennial emergence of this rule of the dispensability of expert opinion for certain types of medical negligence, it is noteworthy that not a single Connecticut Supreme Court decision thus far has actually *applied* it to a set of facts before it!  Indeed, a careful perusal of the cases reported in the *Connecticut Supplement* fails to disclose even an opinion by a trial court invoking this principle in support of a judgment for the plaintiff.  We are thus left with an 'exception' to the expert opinion requirement which is mere dictum, and ambiguous dictum at that."  Margolis, "Medical Malpractice in Connecticut:  Landon v. Humphrey Revisited," 32 Conn. B.J. 51, 58.

[2] "There are, however, some medical or surgical errors on which any layman is competent to pass judgment and conclude from common experience that such things do not happen if there had been proper skill and care.  When an operation leaves a sponge in the patient's interior, or removes or injures an inappropriate part of his anatomy, or when a tooth is dropped down his windpipe, or he suffers a serious burn from a hot water bottle, or when instruments are not sterilized, the thing speaks for itself without the aid of any expert's advice."  Prosser, Torts (3d Ed.) p. 231.

skill and care common to the profession, there is usually not enough in a mistaken diagnosis alone . . . to show the necessary lack of skill or care." Prosser, Torts (3d Ed.) p. 231; see *Quinley* v. *Cocke,* 183 Tenn. 428, 438; *Ayers* v. *Parry,* 192 F.2d 181, 185; *Voss* v. *Bridwell,* 188 Kan. 643, 658 ("It must be conceded the doctrine of *res ipsa loquitur* can have no application in a suit against a physician or surgeon which involves the merits of a diagnosis . . . ."); *Sieling* v. *Mahrer,* 71 Ohio L. Abs. 571, 573; *Stephenson* v. *Kaiser Foundation Hospitals,* 203 Cal. App. 2d 631, 635 (mistaken diagnosis of pregnancy). Mere proof that the diagnosis later on turned out to be erroneous is insufficient to support a judgment. See *Patterson* v. *Marcus,* 203 Cal. 550, 552.

Since the defendant failed to offer any expert evidence as to what method or means the plaintiff should have employed to determine the presence or absence of pregnancy, the judgment on the counterclaim cannot stand. It is unnecessary to discuss the other claims of error. No appeal was taken from the judgment on the complaint.

There is error only as to the judgment on the counterclaim, the judgment on the counterclaim is set aside and the case is remanded for a new trial of the issues framed in the counterclaim.

In this opinion PRUYN and KOSICKI, Js., concurred.