The plaintiff commenced this action to recover fees for legal and financial services rendered to the defendant at his request. The defendant denied having hired the plaintiff, denied the value of the services alleged by the plaintiff and further claimed by way of special defense that "[t]he opinion, proffered by the plaintiff, was so ill-advised that the defendant deemed it a rip-off."
The matter was tried to a jury which returned a general verdict for the defendant. The plaintiff has appealed the denial of his motion to set aside the verdict claiming that the court erred in its charge to the jury. We agree and remand the matter for a new trial. *Page 418 
The jury might reasonably have found that the plaintiff is an attorney who specializes in tax and financial planning for professional athletes. The defendant, a native of Canada, was a professional hockey player. During the 1974-75 season, he was a member of the New England Whalers Hockey Club.
In January, 1975, the plaintiff met the defendant in a Hartford restaurant. Shortly thereafter, the defendant hired the plaintiff to prepare his 1974 federal income tax return. Thereafter, the plaintiff handled an immigration matter for the defendant. Those services were billed and paid for and are not in dispute here.
In the spring of 1975, the defendant asked the plaintiff the cost of obtaining an overall tax and financial plan and was informed by the plaintiff that he charged a flat fee of $3000 to prepare such a plan and $2000 to implement it. In May, 1975, the defendant signed a three year contract with the Winnipeg Jets Hockey Club. Thereafter in June, he went to the plaintiff's office in Boston and furnished him with a full financial disclosure. As a result of those discussions, the plaintiff began work on a tax plan for the defendant which contemplated the preparation of several trusts for his children, the creation of a Canadian corporation to receive his hockey salary and the establishment of a Bahamian residency.
On July 11, 1975, the plaintiff went to the defendant's home in Avon, discussed the plan with the defendant and his wife and left with him a number of documents which required his signature in order to effectuate the proposed plan. The parties scheduled a meeting in Boston for July 14, 1975, which was rescheduled to July 17, 1975. On that date the defendant telephoned the plaintiff, cancelled the appointment and told him he would no longer require his services. The plaintiff thereafter sent the defendant a bill for his services which remains unpaid. *Page 419 
The plaintiff first assigns as error the court's charge to the jury concerning the special defense that "[t]he opinion, proffered by the plaintiff, was so ill-advised that the defendant deemed it a rip-off." The court instructed the jury as follows: "Now, if you find that the services performed by the plaintiff were ill-advised and that they might subject the defendant to problems were he to proceed with the recommended approach and if a reasonable person would therefore have told the plaintiff not to proceed further, then the defendant would be justified in stopping the plaintiff from performing the services. However, it is incumbent upon the defendant to establish that advice given by the plaintiff was so ill-advised to be unreasonable and any finding thereon must be based upon the preponderance of the evidence and not upon surmise, conjecture or sympathy."
The court further charged that "if you find by a fair preponderance of the evidence that the plaintiff's advice, that is that a financial plan presented to the defendant was not what the defendant agreed to or bargained for with the plaintiff or that the services performed by the plaintiff were ill-advised with regard to the defendant's situation, then you must enter a verdict for the defendant."
The plaintiff argues that the court should have instructed the jury not to consider the special defense at all as there was no expert testimony that the plaintiff's opinion was "ill-advised." We agree.
Although curiously worded, the special defense effectively claims that the plaintiff failed to perform the contract with the degree of skill and care required of his calling. "Ill-advised" means that which results from or shows a lack of wise and sufficient counsel or deliberation. Webster's Third New International Dictionary. The special defense is, in essence, a claim of professional *Page 420 
malpractice. By specially pleading this defense, the defendant assumed the burden of proving it. Practice Book 164; DuBose v. Carabetta, 161 Conn. 254, 262, 287 A.2d 357
(1971).
The duty of the plaintiff in his capacity as an attorney specializing in taxation and financial planning was to exercise reasonable care, skill and diligence in the performance and execution of the legal services being furnished to the defendant. The level of that duty was to exercise the same degree of care, skill and diligence which other attorneys in the same or similar locality and in the same line of practice would have exercised in similar circumstances. Wright v. Williams, 47 Cal.App.3d 802, 809-10,121 Cal.Rptr. 194 (1975).
The general rule is that where the exercise of proper professional skill and care is in issue, expert testimony tending to establish the want of such skill and care Is essential to recovery. Cf. Grody v. Tulin, 170 Conn. 443, 449, 365 A.2d 1076
(1976); Decho v. Shutkin, 144 Conn. 102, 106,127 A.2d 618 (1956). The rationale underlying this rule is that "in most such cases the lay person, including the members of the jury and the presiding judge, does not and can not have the requisite knowledge as to whether proper treatment was given, proper procedure was followed, or proper care was used. Decho v. Shutkin, 144 Conn. 102,106, 127 A.2d 618 [1956]; Marchlewski v. Casella, [141 Conn. 377, 380, 106 A.2d 466 (1954)]; Chubb v. Holmes, 111 Conn. 482, 486, 150 A. 516 [1930]; Holden Daly, Connecticut Evidence 119(d)." Fitzmaurice v. Flynn, 167 Conn. 609, 617,356 A.2d 887 (1975).
The only exception to this rule is where there is present such an obvious and gross want of care and skill that the neglect is clear even to a layperson. Levett v. Etkind,158 Conn. 567, 574, 265 A.2d 70 (1969); Console v. Nickou, 156 Conn. 268, 273, 240 A.2d 895 (1968); *Page 421 
Snyder v. Pantaleo, 143 Conn. 290, 292,122 A.2d 21 (1956); Ardoline v. Keegan, 140 Conn. 552, 557,102 A.2d 352 (1954). That is not the case here.
The defendant offered no evidence in support of his claim. The plaintiff on the other hand testified that his plan consisted of the establishment of three trusts each for a term of ten years and two months for the benefit of the defendant's three children. The trusts would be funded through use of the defendant's assets, principally stocks and bonds. While these assets were so held, their income would be chargeable to the defendant's children who would presumably be in a lower income tax bracket. At the end of the trusts' terms, the assets would revert to the defendant.[2] His plan further contemplated the formation of a Canadian corporation which would receive the income for the defendant's services as a hockey player and pay him a salary. This would presumably permit the defendant to spread out his earning over a period of years, thereby causing him to be in a lower income tax bracket. Although there was evidence that the plaintiff was advised to establish a Bahamian residency, the reasons for this do not appear in the record.
We find that proposals of such intricacy and their suitability to the defendant's unique needs involving specialized knowledge of United States, Canadian and *Page 422 
possibly Bahamian tax and corporate law, go well beyond the scope of what a lay person could fairly construe as negligent. We therefore conclude that expert testimony was essential for the establishment of the defendant's malpractice defense.
The defendant argues that even if there was a requirement for expert testimony, such testimony was supplied through the cross-examination of Jeffrey Crown, an attorney called in behalf of the plaintiff. We do not agree.
The witness testified that "Clifford" trusts are no longer executed and that they went out with the Tax Reform Act of 1976. The defendant claims that this "demonstrated a failure by the Plaintiff to meet recognized standards." Although the term "Clifford" trust is no longer used, this type of arrangement continues to be used and is in fact authorized under the grantor trust provisions of the Internal Revenue Code. See 26 U.S.C. § 671
through 678. Moreover, at the time the plaintiff rendered the services to the defendant, i.e., 1975, "Clifford" trusts were still employed as a tax limiting device.
The defendant complained throughout of the manner in which the documents were thrust upon him by the plaintiff accompanied by a request that they be executed forthwith. Attorney Crown testified on cross-examination that he would have "discussed this thing in advance." While it is important that a client be informed of all relevant considerations and that matters be handled in a systematic, orderly and unhurried manner, we recognize that the manner in which clients are going to be handled or treated by different attorneys is so varied that it defies reasonable codification. We find that this witness's isolated statement does not as a matter of law furnish sufficient expert testimony to support a finding of legal malpractice. *Page 423 
Finally, the jury's rejection of the expert witness's testimony that the plaintiff had exercised due care (if this was in fact what the jury did) cannot by itself serve as a basis for concluding that malpractice existed. Snyder v. Pantaleo, supra, 294; Ropiak v. O'Leary,38 Conn. Sup. 597, 598-99, 456 A.2d 1215 (1982).
The defendant next argues that even if the court erred in instructing the jury to consider his special defense, his general denial of the existence of the contract constituted a separate defense upon which the jury could have predicated its verdict. Since no interrogatories were submitted to the jury, the defendant argues that under the general verdict rule, he is entitled to the benefit of a presumption that the jury resolved this question in his favor. Therefore, any error with respect to the charge concerning the special defense of malpractice becomes irrelevant as a separate and distinct basis exists for supporting the verdict.
The general verdict rule provides that "[w]here a jury has rendered a general verdict, on appeal we are unable to determine whether the case against the defendant was resolved on the basis of either the plaintiff's failure to prove the case or the defendant's successful assertion of a special defense. . . . It is presumed, therefore, that the jury found every issue in favor of the defendants. . . . If `the court's instructions are shown to be proper and adequate as to any one of the defenses raised, the general verdict will stand irrespective of any error in the charge as to the others.'" (Citations omitted.) Stone v. Bastarache, 188 Conn. 201, 204-205, 449 A.2d 142
(1982).
In response to this assertion, the plaintiff claims that the defense to the general contract claim is itself flawed for the reason that the court erroneously charged the jury on the principles of unjust enrichment thereby *Page 424 
injecting a matter which was not at issue in the case and thus tainting the jury's entire perception of the complaint. We conclude this to be the case.
The court charged that "[t]he plaintiff has based his claim in this case upon a theory of law known as quantum meruit, which means that he claims that the defendant has been unjustly enriched by what the plaintiff did for him. Therefore, before you should render an award of damages to the plaintiff, you must find that the defendant has received something of value. You will not find for the plaintiff unless the defendant has been unjustly enriched."
The test to determine if a jury charge is proper is whether "`it fairly presents the case to the jury, in such [a] way that injustice was not done under the rules of law to the legal rights of either litigant. . . .' Pratt, Read Co. v. New York, N.H. H.R. Co., 102 Conn. 735, 740,130 A. 102 [1925]." Borsoi v. Sparico, 141 Conn. 366,371, 106 A.2d 170 (1954). "A proper jury charge must be correct in law, adapted to the issues and ample for the guidance of the jury. . . . Jury instructions should be confined to matters in issue by virtue of the pleadings and evidence in the case." (Citations omitted.) Mack v. Perzanowski, 172 Conn. 310, 313, 374 A.2d 236
(1977).
The allegations of the present complaint aver that the parties had a contract. Within the framework of the pleadings, the contract could have been the result of an express agreement of the parties or it could have arisen by implication based upon what was said or done. The issue before the jury then was whether there existed by express agreement or there arose by implication through the parties' conduct that mutuality of understanding or undertaking which creates in law, a contract. *Page 425 
Unjust enrichment, on the other hand, applies "`wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract.' 5 Williston, Contracts (Rev. Ed.) 1479. `A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another.'" Cecio Bros., Inc. v. Greenwich, 156 Conn. 561, 564, 244 A.2d 404
(1968); CBS Surgical Group, Inc. v. Holt,37 Conn. Sup. 555, 557-58, 426 A.2d 819 (1981).
To have stated that "[y]ou will not find for the plaintiff unless the defendant has been unjustly enriched" could easily have misled the jury into believing that the defendant's liability hinged upon his actually receiving some material benefit from the plaintiff. Since the defendant had declined to accept the original plan and the various documents, i.e., the material benefits, which the plaintiff had prepared for him, it is readily evident that the verdict here could have been the product of a misperception of the law based on this portion of the charge.
 There is error, the judgment is set aside and a new trial is ordered.
In this opinion DALY and BIELUCH, Js., concurred.