JOSEPH E. CELENTANO ET AL. *v.*
IRA B. GRUDBERG ET AL.
(AC 22656)

Lavery, C. J., and Dranginis and Peters, Js.

---

Argued December 3, 2002—officially released April 8, 2003

*David Toro*, with whom, on the brief, was *John R. Williams*, for the appellant (plaintiffs).

*David A. Leff*, with whom were *Trisha Morris Porto* and, on the brief, *Ira B. Grudberg*, for the appellees (defendants).

*Opinion*

LAVERY, C. J. This case concerns the failure of the plaintiffs to present expert testimony in a breach of contract action against their former attorney and his law firm, and the direction of a verdict by the trial court against the plaintiffs for their failure to present such testimony and for their failure to present evidence of damages. The dispositive issue in this appeal is whether the plaintiffs were required to present expert testimony to prove their breach of contract claim. Because we conclude that the plaintiffs' breach of contract claim required expert testimony to establish the defendants' standard of care and to assist the jury in determining whether the defendants' actions complied with that standard, we affirm the judgment of the trial court.

The following facts and procedural history are necessary for the disposition of the plaintiffs' appeal. This breach of contract claim arose out of an attorney-client relationship that was formed in December, 1987,

between the plaintiffs, Joseph E. Celentano and Solid Waste Disposal, Inc. (Solid Waste), and the defendants, Ira B. Grudberg and his law firm, Jacobs, Grudberg, Belt and Dow.[1] Celentano and Joseph Latella (Latella) were principals and owners of Solid Waste, a closely held corporation that operated landfills in West Haven. Latella and his son, Peter Latella, were principals in Latella Carting Company, Inc. (Latella Carting), a company that dumped refuse in the two landfills operated by Solid Waste. In 1985, Celentano and Latella entered into an agreement (1985 agreement) relating to the operation of the landfills.[2]

At some point subsequent to the 1985 agreement, Celentano came to believe that he was being cheated at the landfills. Specifically, he believed that trucks operated by Latella Carting were dumping more refuse in the early mornings, before the opening of the scales, than was allowed under the 1985 agreement.[3] In September, 1987, Celentano consulted with Grudberg regarding the possibility of pursuing a claim against certain individuals and entities with whom he was involved at the landfill, including the Latellas and Latella Carting. In December, 1987, Celentano again met with Grudberg and expressed his desire to proceed with a claim. On December 9, 1987, Grudberg sent a letter to Celentano, confirming their retainer agreement. Pursuant to that agreement, Celentano paid a $10,000 retainer to Grudberg.[4]

[1] For purposes of this opinion, when we refer to Grudberg, we incorporate Jacobs, Grudberg, Belt and Dow by reference, as Grudberg and his law firm are synonymous for purposes of this appeal.

[2] At some point subsequent to the 1985 agreement between Celentano and Latella relating to Solid Waste's operation of two landfills, Joseph Latella assigned his interest in Solid Waste to his son, Peter Latella.

[3] One of the provisions of the agreement allowed Latella Carting to "deliver and dump at Solid Waste disposal sites no more than seven truckloads of solid waste per day prior to the opening of the scales at 7:00 a.m. each day."

[4] According to the letter, the defendants, in addition to the $10,000 retainer, were to receive, on a contingency basis, 15 percent of any sums the defendants recovered on the plaintiffs' behalf.

The 1985 agreement contained an arbitration provision that provided that any disputes "arising subsequent to the date of [the] Agreement over the operation of Solid Waste or the interpretation of [the] Agreement shall be submitted to private arbitration and the parties agree that the independent arbitrator shall be Joseph Dobrowolski . . . ." Grudberg made a strategic decision to institute an action against individuals who were not parties to the 1985 agreement to gain information through the utilization of discovery procedures. He did that because he wanted to take depositions of certain individuals who might have had pertinent information rather than to "subpoena them in, cold turkey, as part of an arbitration . . . ." Grudberg encountered numerous obstacles and delays in his attempt to obtain depositions of the various individuals.[5] Ultimately, he had to obtain a court order to compel the depositions of certain individuals. In September, 1990, the depositions were completed, and Grudberg withdrew the case. In January, 1991, more than two years after taking the plaintiffs' case, Grudberg obtained a court order for arbitration. The arbitration was never completed.

In 1998, the plaintiffs filed the present action. In their complaint, the plaintiffs alleged that the defendants had breached their contract by (1) not obtaining a court order to compel arbitration for more than two years after the defendants were retained by the plaintiffs, and (2) never conducting the arbitration hearing and abandoning the plaintiffs' claims on or after June 29, 1994.

The case was tried to a jury. At the conclusion of the plaintiffs' case-in-chief, the defendants sought a directed verdict. The court granted the motion and

---

[5] Among those obstacles and delays were other attorneys' scheduling problems, unrepresented individuals, motions to withdraw and deponents who failed to attend depositions.

directed the jury to return a verdict in favor of the defendants as a matter of law because it concluded that the plaintiffs had failed (1) to present expert testimony as to "[w]hether [Grudberg's] conduct in the performance of his duties met the standard of attorneys doing work of this nature or was deficient" and (2) to adduce any evidence of damages. This appeal followed. Additional facts will be set forth as necessary.

Initially, we set forth our standard of review with respect to directed verdicts. "The standards for reviewing a challenge to a directed verdict are well known. Generally, litigants have a constitutional right to have factual issues resolved by the jury. . . . Directed verdicts [therefore] are historically not favored and can be upheld on appeal only when the jury could not have reasonably and legally reached any other conclusion. . . . We review a trial court's decision to direct a verdict for the defendant[s] by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff[s]. . . . A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a favorable verdict." (Citations omitted; internal quotation marks omitted.) *Vona* v. *Lerner*, 72 Conn. App. 179, 186–87, 804 A.2d 1018 (2002), cert. denied, 262 Conn. 938, 815 A.2d 138 (2003).

On appeal, the plaintiffs claim that the court improperly directed the verdict in favor of the defendants. Specifically, the plaintiffs claim that the court improperly determined that they were required to present expert testimony to prove their breach of contract claim against the defendants.[6] We disagree.

---

[6] The plaintiffs also claim that the court improperly determined that they had failed to adduce evidence of damages. Because our resolution of the plaintiffs' first claim is dispositive of this appeal, we need not address the plaintiffs' second claim.

The plaintiffs argue that this is a simple breach of contract claim, not a malpractice claim based on negligence, and, therefore, expert testimony was not required. Alternatively, citing *Davis* v. *Margolis*, 215 Conn. 408, 576 A.2d 489 (1990), the plaintiffs argue that even if expert testimony ordinarily would be required in a case such as this, such testimony was not required here because "there [was] present such an obvious and gross want of care and skill that the neglect is clear even to a lay-person." (Internal quotation marks omitted.) Id., 416 n.6.

The plaintiffs first argue that the court improperly determined that expert testimony was required to prove their breach of contract case. They argue that this is not a case in which they alleged incompetence or failure to meet a standard of care by the defendants, but that, instead, the only issue before the jury was "whether the defendant agreed to do a specific thing in exchange for consideration which was paid and then failed to do it." Although the plaintiffs' counsel conceded at oral argument that there was not an express contract between the parties, the plaintiffs, nevertheless, contend that the defendants "agreed, in exchange for a fee, to institute and to pursue to a conclusion a claim by the plaintiffs against certain persons and entities, and that they breached that contract by not pursuing the matter to a conclusion."[7]

It is well settled that an attorney may be subject to a claim for breach of contract arising from an agreement to perform professional services. See *Mac's Car City, Inc.* v. *DeNigris*, 18 Conn. App. 525, 530, 559 A.2d 712, cert. denied, 212 Conn. 807, 563 A.2d 1356 (1989). In a claim such as this, "the client [usually] has the option to sue for either breach of an implied contract, negli-

---

[7] We note that the plaintiffs have not alleged that the defendants failed to follow a specific instruction.

gence or both." 1 R. Mallen & J. Smith, Legal Malpractice (5th Ed. 2000) § 8.7, p. 820.

The difficulty with the plaintiffs' argument is that a breach of contract action against an attorney, on the basis of an implied contract is, essentially, governed by the same principles as a negligence action, and both are predicated on the standard of care applicable to the attorney. See *Wong* v. *Ekberg*, 148 N.H. 369, 376, 807 A.2d 1266 (2002); *Peters* v. *Simmons*, 87 Wash. 2d 400, 404, 552 P.2d 1053 (1976); 1 R. Mallen & J. Smith, supra, § 8.7, pp. 819–20. Contrary to the plaintiffs' position, an attorney does not, by agreeing to represent or to provide professional services to a client, impliedly contract to see the client's claim through to conclusion. To read an attorney-client relationship to contain an implied promise to pursue a claim to conclusion would lead to bizarre and untenable results. There are conceivably many valid reasons why an attorney might decide, after taking a case, to not pursue it to conclusion.

By agreeing to take on the representation of a client, the attorney promises to exercise ordinary skill and care in the representation of the client. 1 R. Mallen & J. Smith, supra, § 8.7, p. 819; see also *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal. 3d 176, 181, 491 P.2d 421, 98 Cal. Rptr. 837 (1971); *Harris* v. *Magri*, 39 Mass. App. 349, 352, 656 N.E.2d 585 (1995); *Gorski* v. *Smith*, 812 A.2d 683, 703 (Pa. Super. 2002); *Peters* v. *Simmons*, supra, 87 Wash. 2d 404. Thus, an attorney, "by accepting employment to give legal advice or to render other legal services, impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake. . . . These principles are equally applicable whether the plaintiff's claim is based on tort or breach of contract." (Citations omitted; internal quotation marks omitted.) *Kirsch* v. *Duryea*, 21 Cal. 3d 303, 578 P.2d

935, 146 Cal. Rptr. 218 (1978); *Gorski* v. *Smith,* supra, 703. In the absence of an express promise to see a claim through to conclusion, an attorney will breach the contract only if his performance fails to comply with the applicable standard of care.[8]

To prove their claim, the plaintiffs were required to show that Grudberg's performance constituted a breach of the applicable standard of care. "If the determination of the standard of care requires knowledge that is beyond the experience of an ordinary fact finder, expert testimony will be required." *Santopietro* v. *New Haven,* 239 Conn. 207, 226, 682 A.2d 106 (1996). "The general rule is that where [an attorney's] exercise of proper professional skill and care is in issue, expert testimony tending to establish the want of such skill and care is essential to recovery." *Bent* v. *Green,* 39 Conn. Sup. 416, 420, 466 A.2d 322 (App. Sess. 1983). The rationale underlying that rule is that in most cases, the determination of an attorney's standard of care, which depends on the particular circumstances of the attorney's representation, is beyond the experience of the average layperson, including members of the jury and perhaps even the presiding judge. See id.; see also *Wong* v. *Ekberg,* supra, 148 N.H. 374 ("expert testimony is necessary to inform the jury regarding the skill and care ordinarily exercised by lawyers, a measure not ordinarily within the common knowledge of lay persons").

"The only exception to this rule is where there is present such an obvious and gross want of care and skill that the neglect [to meet the standard of care] is clear even to a layperson." *Bent* v. *Green,* supra, 39 Conn. Sup. 420; see also *Davis* v. *Margolis,* supra, 215 Conn. 416 n.6; *Paul* v. *Gordon,* 58 Conn. App. 724, 727,

---

[8] We note that in practice, complying with the standard of care often will mean seeing a client's claim through to conclusion. There are, however, situations in which an attorney may fail to pursue a claim to conclusion and yet still comply with the standard of care.

754 A.2d 851 (2000). Thus, unless the defendants' performance constituted such an obvious and gross want of care and skill as to fall within the exception to the expert witness requirement, the plaintiffs were required to present expert testimony to establish the proper standard of professional skill and care to which Grudberg was held and to assist the jury in evaluating his performance in light of that standard.

The plaintiffs argue that the exception to the expert witness requirement applies here because Grudberg's performance constituted "such an obvious and gross want of care and skill that the neglect is clear even to a layperson." The plaintiffs contend that Grudberg's "neglect . . . consisted of doing nothing when something was required." We disagree.

The following additional facts are relevant to our resolution of the plaintiffs' claim. As previously stated, Grudberg, in his representation of the plaintiffs, was faced with a preexisting contract that contained an arbitration provision naming the arbitrator. He made a strategic decision to institute a separate action against individuals who were not parties to the 1985 agreement in order to pursue discovery. He encountered numerous obstacles and delays, not of his own making, in his attempts to obtain various depositions. After finally completing the depositions, in September, 1990, Grudberg moved forward with attempting to set up the arbitration. The arbitration opponents failed to respond to his demand for arbitration, requiring Grudberg to obtain a court order to compel the arbitration.

Grudberg then spent several months attempting, unsuccessfully, to set an arbitration date with the named arbitrator, Dobrowolski, who, apparently, would not schedule the arbitration unless all the parties were present and represented. Grudberg also communicated with various attorneys in an attempt to determine if the

Latellas were represented and to move forward with the arbitration. Grudberg did not, however, seek to remove Dobrowolski as the arbitrator.

Late in 1991, Celentano told Grudberg that he was going to try to work things out with Latella directly. Grudberg ceased pursuit of the arbitration and took no further action to pursue arbitration until March, 1993, when he next heard from Celentano. Beginning in March, 1993, Grudberg again made attempts to get an arbitration date set. In July, 1993, Grudberg received a letter from Celentano, informing him that the "Latellas financial situation is so serious that, I know, for a fact, there are no monies available." After receiving that letter, Grudberg, essentially, ceased pursuit of the arbitration.

This was not a case in which the defendant, after accepting the representation, did nothing. Rather, considerable evidence was presented at trial regarding the strategies Grudberg employed, the obstacles he encountered, the actions he took and did not take in his representation of the plaintiffs, and his reasons for taking or not taking those actions. Complicated legal and procedural issues were involved. Given the circumstances of Grudberg's representation and the work that he did on behalf of the plaintiffs, members of a jury would be without the knowledge or ability to determine whether the choices Grudberg made and the actions he took met the standard of an attorney exercising that "degree of care, skill and diligence which other attorneys in the same or similar locality . . . would have exercised in similar circumstances." *Bent* v. *Green,* supra, 39 Conn. Sup. 420. The court was correct when it determined that "[j]ury fact finders are without the training, experience and knowledge of an attorney. Therefore, they require expert testimony to decide whether defendant Grudberg's abandonment of the claims were reasonable in light of his client's statement that a recovery would

be essentially uncollectible and that the Latellas had nothing. And further, the jury would need the assistance of expert testimony . . . as to whether Grudberg's pursuit of arbitration through attorney Dobrowolski only . . . met the standard [of care]. And finally, whether defendant Grudberg's reliance on plaintiff Celentano's pursuit of Latella informally, [which ended up delaying the proceedings to a point where the Latellas lacked funds to pay a judgment against them], was a proper strategic decision."[9]

This was not a case in which the defendant's want of care was so gross and obvious that his failure to comply with the standard of care was clear, even to a layperson. See, e.g., *Paul* v. *Gordon*, supra, 58 Conn. App. 727. Expert testimony was required to assist the jury in determining whether Grudberg's performance complied with the requisite standard of care. We conclude that because the plaintiffs failed to present expert testimony on the issue of the standard of care applicable to Grudberg, the court properly directed the jury to return a verdict in favor of the defendants on the plaintiffs' breach of contract claim.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] In regard to the plaintiffs' claim that the defendants breached their contract by not obtaining an order for arbitration until more than two years after accepting the representation, a claim that the plaintiffs' do not appear to pursue on appeal, the court stated, and we agree, that "[e]xpert testimony is necessary to assist the trier of facts in determining whether the conduct of the defendants here in the preparation of the plaintiffs' claim for arbitration and in the pursuit of the discovery procedure before a court order of arbitration was reasonable in terms of the timeliness of . . . the court order of arbitration. Issues such as delay occasioned by no-shows, other attorneys' scheduling problems, unrepresented individuals, motions to withdraw, and the like are not circumstances or issues that laypeople know about or are aware of or have the cognizance to understand and appreciate as to what the law and the Practice Book provide, allow for or restrict."