ALLISON CARUSILLO ET AL. *v.* ASSOCIATED
WOMEN'S HEALTH SPECIALISTS, P.C.
(AC 21604)

Foti, Dranginis and Flynn, Js.

Argued March 24—officially released September 23, 2003

*William F. Gallagher*, with whom, on the brief, was *Roger B. Calistro*, for the appellants (plaintiffs).

*Eugene A. Cooney*, for the appellee (defendant).

*Opinion*

DRANGINIS, J. This case is before us on remand from our Supreme Court. *Carusillo* v. *Associated Women's Health Specialists, P.C.*, 262 Conn. 920, 812 A.2d 861 (2002). The plaintiff Allison Carusillo[1] appealed to this court from the judgment of the trial court rendered in favor of the defendant, Associated Women's Health Specialists, P.C., after the granting of the defendant's motion to set aside the jury's verdict and damages award. We determined that the court improperly granted the defendant's motion because expert testimony may be based on inadmissible hearsay as long as the expert's opinion is based on reliable information and the expert witness has sufficient experience to

---

[1] Although Stephen Carusillo, the husband of Allison Carusillo, also is a plaintiff, we refer in this opinion to Allison Carusillo as the plaintiff.

evaluate the information. Our Supreme Court granted the defendant's petition for certification to appeal and, in the same order, remanded the case to us for consideration of the defendant's alternate grounds for affirmance. Those alternate grounds for affirmance are that the plaintiff (1) did not present sufficient evidence of the appropriate standard of care for an operative vaginal delivery, and (2) failed to prove that the defendant did not act in accordance with that standard, and that such failure was a proximate cause of the plaintiff's injuries. We reject the defendant's alternate grounds for affirmance of the trial court's judgment.

The underlying facts and procedural history of this case are fully set forth in our opinion in *Carusillo* v. *Associated Women's Health Specialists, P.C.*, 72 Conn. App. 75, 76–83, 804 A.2d 960, remanded, 262 Conn. 920, 812 A.2d 861 (2002). The following summary of the facts is necessary to resolve the defendant's alternate arguments. On October 6, 1994, the plaintiff went to Waterbury Hospital to deliver her first child. At approximately 5:30 p.m., after the plaintiff had been pushing for two hours, Janet Vodra, the delivering obstetrician-gynecologist employed by the defendant medical practice, did an internal examination and determined that the baby was at a "plus two" station.[2] Because there was little or no progress in the baby's descent within the birth canal, Vodra decided to use a vacuum extractor to get the baby's head to come out of the womb.[3] After repeated attempts with the vacuum extractor, the baby's head was delivered. The baby's shoulder, however, became stuck behind the plaintiff's pubic bone, a condition known as shoulder dystocia. Vodra made a fourth degree episiotomy, which is a vertical incision

---

[2] A "plus two" station means that the baby's head is located two centimeters lower than the level of a woman's ischial spines in the birth canal.

[3] A vacuum extractor is a cup made of steel or soft flexible plastic. It is attached to a suction device to help guide the baby out of the birth canal.

in the perineal tissue (the area between the vagina and the rectum), thereby allowing more room for the baby's delivery through the birth canal. The baby was delivered twelve to fifteen minutes later; she appeared normal except for an elongated head. Following the delivery, Vodra surgically repaired the episiotomy. The plaintiff subsequently suffered from a rectovaginal fistula (passage of stool through the vagina) and underwent two operations by Ian Cohen, another physician employed by the defendant, and David Cherry, a physician outside the defendant practice, to repair the nonhealing episiotomy incision, but the plaintiff continues to suffer pain and permanent incontinence.

In April, 1996, the plaintiff brought an action against the defendant, naming Vodra and Cohen as its agents.[4] In her complaint, the plaintiff alleged that Vodra's performance of a high pelvic operative vaginal delivery had resulted in the baby's presentment of shoulder dystocia.[5] She asserted that when confronted with the obstetric complication, Vodra performed a fourth degree episiotomy, which subsequently caused the plaintiff permanent injury. At trial, each side presented the testimony of one expert witness. The plaintiff offered the testimony of Harold Schulman, and the defendant presented expert testimony from Edmund Olson. Both are board certified obstetricians and gynecologists. The case proceeded to trial before a jury, which returned a verdict in favor of the plaintiff, awarding $5000 in economic damages and $265,000 in noneconomic damages. Thereafter, the defendant filed a motion to set aside the verdict, which the court granted. In its memorandum of decision addressing the defen-

[4] The medical negligence alleged is not that the medical procedures used were performed improperly, but that they were inappropriate under the circumstances.

[5] The use of a vacuum extractor (or forceps) for delivery of a baby's head is termed an "operative vaginal delivery."

dant's motion, the court found that the plaintiff's expert witness testimony on causation consisted of inadmissible hearsay. The plaintiff appealed to this court. We reversed the court's judgment, and remanded the case with direction to reinstate the jury's verdict and to render judgment on the verdict in favor of the plaintiff. Thereafter, the defendant appealed to our Supreme Court, which granted the petition for certification to appeal and remanded the case for us to consider the defendant's alternate grounds for affirmance. See *Carusillo* v. *Associated Women's Health Specialists, P.C.*, supra, 262 Conn. 920.

We first note the applicable standard of review. "[T]he proper appellate standard of review when considering the action of a trial court granting or denying a motion to set aside a verdict and motion for a new trial . . . [is] the abuse of discretion standard. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . .

"A court is empowered to set aside a jury verdict when, in the court's opinion, the verdict is contrary to the law or unsupported by the evidence. . . . A verdict should not be set aside, however, where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion. . . . In analyzing a sufficiency of the evidence claim, the test that we employ is whether, on the basis of the evidence before the jury, a reasonable and properly motivated jury could return the verdict that it did. . . . On appellate review, therefore, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled." (Citations omitted; internal quota-

tion marks omitted.) *Marchell* v. *Whelchel*, 66 Conn. App. 574, 581–82, 785 A.2d 253 (2001).

We also note that a medical negligence action requires the plaintiff to prove "(1) the requisite standard of care for treatment, (2) a deviation from that standard of care, and (3) a causal connection between the deviation and the claimed injury. . . . Generally, expert testimony is required to establish both the standard of care to which the defendant is held and the breach of that standard." (Internal quotation marks omitted.) *Harlan* v. *Norwalk Anesthesiology, P.C.*, 75 Conn. App. 600, 613, 816 A.2d 719, cert. denied, 264 Conn. 911, 826 A.2d 1155 (2003).

I

The defendant first argues that the plaintiff did not present expert testimony establishing the required standard of care for performing an operative vaginal delivery. Our review of Schulman's testimony persuades us that the plaintiff set forth the standard of care by which the jury could have evaluated the defendant's conduct.

According to Schulman, a former member of the American College of Obstetricians and Gynecologists, the prevailing standard of care in effect in October, 1994, required that a physician perform an operative vaginal delivery only after determining that the leading bony point of the baby's head is at the level of the ischial spines and the biparietal diameter has passed the maternal pelvic inlet. He also testified that physicians should always assess the station by both abdominal method and pelvic method to be certain that the skull is at an adequate station. Finally, Schulman testified that the standard of care prohibited physicians from performing a vacuum assisted delivery when the station (location) of the baby's head is high in the birth canal.[6]

---

[6] Schulman testified that the station of the baby's head in the birth canal is determined by the relationship of the head to bony projections, also referred to as the ischial spines, in the pelvis. Schulman explained that the

We conclude, therefore, that Schulman's testimony concerning the then accepted standard of care was sufficient for the plaintiff to meet her burden of providing expert testimony to establish the requisite professional standard of care for performing an operative vaginal delivery.

## II

Next, we determine whether there was sufficient evidence that the defendant deviated from the required standard of care in its care and treatment of the plaintiff and whether the facts alleged established causation. Schulman testified that in his opinion, Vodra breached the standard of care when she performed a high pelvic instrumental delivery. He opined that to a reasonable degree of medical certainty, had the vacuum not been used, the baby would not have had a problem with her shoulders fitting through the plaintiff's pelvis and, thus, the episiotomy would not have been necessary and the plaintiff would not have suffered permanent incontinence resulting from the fourth degree episiotomy.

Schulman testified that the following facts led him to conclude that the baby was too high in the birth canal, thereby causing the unnecessary episiotomy: (1) the baby was in a "plus two" station and in an occiput posterior position (baby is head down, but facing the

ischial spines are the narrowest point of the pelvis and are commonly used to measure the point of the baby's descent. That point is known as zero station. Essentially, that is the definition of engagement of the fetal head: When the biparietal diameter (width) of the baby's head has passed through the pelvic inlet. If the head lies above the ischial spines, the station is reported as a negative number from zero to negative five, where each number is a centimeter. If the head, or other presenting part, lies below the ischial spines, the station is reported as a positive number from zero to five, where each number is a centimeter. That information, according to Schulman, is important because physicians need to get a sense of how far the baby has descended into the birth canal before the vacuum extractor can be used. Schulman testified that if the head is above the spines, then it is not engaged, and the baby is too high to deliver vaginally.

mother's abdomen), (2) the frequent detachment of the vacuum extractor cup, (3) presentment of shoulder dystocia and (4) a prolonged second stage of labor. He also testified that he agreed with the defendant that the location of the baby's head is usually low enough for an operative vaginal delivery when the leading bony part of the baby's head is at least two centimeters (or at a plus two station) below the ischial spines. Schulman asserted that if, however, there is molding of the baby's head,[7] as there was here, then the head will appear much lower than it actually is, making the assessment of the station more difficult. Schulman also told the jury that Vodra breached the standard of care by not performing an abdominal exam to help determine if the baby's head was at an adequate station. Olson, the defendant's expert, testified that he believed that Vodra acted within the standard of care and was not negligent when she used the vacuum extractor.

The record here, viewed in the light most favorable to the plaintiff, provides sufficient evidence of her malpractice claim: Applicable standard of care, breach of that standard of care and injury caused by the breach. As with many medical malpractice cases, this case amounted to the proverbial battle of expert witnesses. Nonetheless, conflicting opinion testimony concerning compliance with the applicable standard of care does not necessarily equate to insufficient evidence. "If there is conflicting evidence . . . the fact finder is free to determine which version of the event in question it finds most credible." *State* v. *Bruno*, 236 Conn. 514, 546, 673 A.2d 1117 (1996). "It is axiomatic that we do not reevaluate the credibility to be afforded witnesses or the weight to be given specific testimony." *Maloney* v. *PCRE, LLC*, 68 Conn. App. 727, 736, 793 A.2d 1118

[7] Molding of a baby's head, occurs when the head is compressed while passing through the pelvis during vaginal delivery.

(2002). Therefore, we conclude that the alternate grounds for affirmance do not require a different result.

The judgment is reversed and the case is remanded with direction to reinstate the jury's verdict and damages award and to render judgment in favor of the plaintiff.

In this opinion the other judges concurred.