MESSAGE CENTER MANAGEMENT, INC. *v.* SHELL OIL PRODUCTS COMPANY
(AC 22987)

Foti, Dranginis and Dupont, Js.

Argued April 29—officially released October 5, 2004

*Allan B. Taylor,* for the appellant (plaintiff).

*Sheila A. Huddleston,* with whom were *Lawrence G. Rosenthal, Alexandra M. McHugh* and, on the brief, *Paul D. Sanson,* for the appellee (defendant).

*Opinion*

DUPONT, J. The plaintiff, Message Center Management, Inc., appeals from the judgment of the trial court, rendered after the court granted the motion for judgment notwithstanding the verdict filed by the defendant, Shell Oil Products Company, and reduced the jury's award of damages of $1,351,836 for the plaintiff to one dollar. On appeal, the plaintiff claims that the court improperly (1) limited its evidence that supported its claim for damages and (2) set aside the jury verdict as to damages. Thus, the plaintiff seeks a new trial on the issue of damages only, or, in the alternative, judgment in the amount awarded by the jury.[1] We do not agree with the plaintiff as to its first claim, but agree as to the second claim and, accordingly, reverse the judgment and remand the case with direction to reinstate the jury verdict and to render judgment for the plaintiff in the amount of $1,351,836.

The following facts and procedural history are relevant to the plaintiff's appeal. The plaintiff commenced the present action against the defendant in June, 1997. The plaintiff alleged breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the Connecticut Unfair Trade Practices Act,

---

[1] The plaintiff does not seek to retain the jury's monetary award while simultaneously seeking to obtain a new hearing to add to those damages because of the alleged evidentiary improprieties of the court. See *Cohen* v. *Yale-New Haven Hospital,* 260 Conn. 747, 755, 800 A.2d 499 (2002). In view of our conclusion that the court acted properly in its evidentiary rulings involved in the plaintiff's first claim, we do not reach the question of whether, had we not so concluded, the plaintiff could both retain the benefit of the jury's finding of liability and obtain a new trial on the issue of damages only. See *DeLaurentis* v. *New Haven,* 220 Conn. 225, 268, 597 A.2d 807 (1991).

General Statutes § 42-110a et seq., and sought a declaratory judgment as to the rights of the parties relative to certain disputed matters.[2] The plaintiff claimed damages of lost profits, damage to its reputation and lost business opportunities. The defendant filed a counterclaim alleging fraudulent misrepresentation due to the plaintiff's failure to perform under the parties' contract, unfair trade practices and breach of contract.[3] On appeal, the defendant does not dispute the finding of the jury, and the court's upholding of that finding, that the defendant is liable for breach of contract.

The plaintiff, a Delaware corporation, had one office located in Hartford. It managed properties owned by others, marketing them as potential sites for telecommunications carriers and negotiating leases of the sites as space in which to place telecommunications towers or antennae. It bills and collects rental fees from carriers and receives a percentage of the rental fees paid by the carriers. The plaintiff had been in business since 1989 and, in the mid-1990s, was able to include a new class of consumer services known as personal communication services.

In 1995, the plaintiff identified and approached the defendant as a potential customer, seeking to market the defendant's properties to wireless communications carriers as possible antenna locations pursuant to lease agreements. Three contracts were executed with the defendant as a result. The first was for the management by the plaintiff of 429 properties of the defendant in

---

[2] The counterclaim alleging breach of the implied covenant of good faith and fair dealing was withdrawn before the case was submitted to the jury. The jury found that the plaintiff had not proven that the defendant violated General Statutes § 42-110a et seq., and the plaintiff has not challenged that finding on appeal.

[3] The claim for fraudulent misrepresentation was withdrawn during the pendency of the trial. The jury found in favor of the plaintiff on the remaining claims in the defendant's counterclaim, and the defendant has not challenged those findings on appeal.

the New England region (New England agreement). The second was for the management of 218 properties in the Southeast Florida region (Florida agreement). The third contract was for the management of the defendant's remaining 3529 properties in the United States (national agreement). The national agreement, entered into in April, 1996, is the subject of the present litigation. This litigation concerns the amount of damages due, if any, for the plaintiff's lost profits arising from a breach of the national agreement.[4]

By May, 1997, the plaintiff had not generated any contracts for the defendant under the national agreement. As a result, on May 20, 1997, the defendant sent notice that it would terminate the national agreement as of December, 1997, on the basis of unsatisfactory performance.

Maria Scotti, a witness whose testimony is at issue, was the office manager for the plaintiff and a director of the corporation. She began work there in 1993. Her experience at the company consisted of working with the Federal Communications Commission on licensing issues, certain knowledge of how the wireless communications technology works, finding locations for telecommunications antennae, negotiating management agreements with property owners and negotiating agreements with telecommunications carriers.

Scotti testified as to lost net profits, concluding that the plaintiff would have secured thirty-eight contracts for the defendant within the five year life of the national agreement on the basis of the number of contracts the plaintiff had secured under the New England and Florida agreements. The plaintiff also wanted to show

---

[4] The national agreement provided that it was controlled by Delaware law. The court noted, and we and the parties are in general agreement, that Delaware and Connecticut law allow recovery of lost profits if they can be proven to a reasonable certainty, in the event of a breach of contract.

that the "penetration rate" used by Scotti to estimate the amount of lost profits was reasonable because the number of leases obtained by the plaintiff under the New England and Florida agreements would have been substantially greater but for the defendant's alleged interference with the plaintiff's attempts to secure contracts after the defendant issued notice that it would terminate the national agreement. The plaintiff also wanted to use Scotti's testimony to show the alleged efforts by the defendant's employees to sabotage the plaintiff's efforts at obtaining new contracts under the national agreement once the notice to terminate was sent.

The defendant objected to the introduction of Scotti's testimony, and Scotti was subjected to a lengthy two day voir dire as to the admissibility of her testimony. Some of her voir dire testimony eventually was repeated in the presence of the jury. Scotti was allowed to testify as to her opinion of the lost profits that the plaintiff suffered as a result of the defendant's alleged breach. She was not allowed, however, to testify as to any of the allegedly deliberate efforts of the defendant to subvert the plaintiff's ability to effect additional leases in New England and Southeast Florida. Although other experts testified at trial concerning the methods used to estimate lost profits and the reliability of the methods, Scotti presented testimony that gave projected lost profits. She concluded that the plaintiff would have secured thirty-eight contracts for the defendant over five years. Another expert for the plaintiff, Arthur Haut, an accountant and a professor at the Yale University School of Management, testified that he had reviewed the expense assumptions given to him by Scotti and calculated the plaintiff's lost profits at $2,703,672.

At the close of the plaintiff's case, the defendant filed a motion for a directed verdict, claiming that the plaintiff had failed to present sufficient evidence of

damages because Scotti was not qualified as an expert to offer such evidence, and her methodologies and data were unreliable. The court reserved decision and at the close of all the evidence, the case was submitted to the jury. The jury answered interrogatories and found in favor of the plaintiff on its breach of contract claim, but did not find either party liable on any of their remaining claims. The jury found the defendant liable to the plaintiff for damages on the breach of contract claim in the amount of $1,351,836, exactly half the sum that was calculated as lost profits by Haut. After the verdict, the defendant filed a motion for judgment notwithstanding the verdict or for remittitur, claiming that the plaintiff was entitled to nominal damages only. The defendant claimed in its motion that (1) Scotti's testimony failed to satisfy the standard for admissibility of expert testimony on lost profits, (2) the plaintiff did not establish a clear history of profitability and (3) the plaintiff did not provide competent evidence concerning expenses relating to its performance under the national agreement.

In a memorandum of decision, the court granted the defendant's motion for judgment notwithstanding the verdict, vacated the damages award and rendered judgment for the plaintiff in the amount of one dollar. The court found Scotti to be unqualified to present expert testimony and, as a result, found that the plaintiff had failed to prove damages, namely, lost profits, to a reasonable certainty.

On appeal, the plaintiff claims that it is entitled to a new trial as to the issue of damages because of the improper exclusion of some of Scotti's testimony or, alternatively, that the court improperly usurped the role of fact finder from the jury by rendering judgment of one dollar for the plaintiff notwithstanding the verdict.

## I

The plaintiff claims that the court improperly limited its evidence in support of its claim for damages. Specifically, it claims that the court improperly disallowed testimony by Scotti, which allegedly would have shown that the defendant purposely had interfered with potential agreements that the plaintiff attempted to secure on the defendant's behalf under the New England and Florida agreements. The plaintiff also claims that the court improperly limited the testimony of Gerald Walters, a former director of business development for Omnipoint, a major personal communication services carrier.

"Our standard of review regarding challenges to a trial court's evidentiary rulings is that these rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [party raising the challenge] of substantial prejudice or injustice. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *Pickel* v. *Automated Waste Disposal, Inc.*, 65 Conn. App. 176, 184, 782 A.2d 231 (2001).

The plaintiff alleges that the court utilized a rule of evidence no longer in force to disqualify much of Scotti's testimony as to damages stemming from lost future profits, namely, that a party may not impeach its witness.[5] Although there is language in the transcript of the relevant proceedings to support the plaintiff's claim, we conclude that the court's ruling was well within its discretion in ruling on evidentiary matters.

[5] That rule was abolished in *State* v. *Graham*, 200 Conn. 9, 17, 509 A.2d 493 (1986).

Our conclusion, however, is based on grounds other than that relied on by the court.[6] The evidence should have been excluded as speculative, and because it was probative of an aspect of damages that was not alleged in the complaint and not revealed in response to the defendant's discovery requests.

Evidence is admissible only if it is relevant; that is, if the evidence has a logical tendency to aid the trier of fact in determining a material issue or renders the existence of a material fact more certain or more probable. *Merchant* v. *State Ethics Commission*, 53 Conn. App. 808, 822, 733 A.2d 287 (1999). Although relevant evidence is generally admissible, the court has discretion in excluding evidence that is likely to mislead the jury or complicate the case unnecessarily. *State* v. *Gooch*, 186 Conn. 17, 23, 438 A.2d 867 (1982).

Scotti was attempting to testify that but for the defendant's interference with possible lessees, the statistical model used by the plaintiff to determine lost future profits would have revealed a higher number of leases that could have been obtained under the national agreement. The plaintiff wanted to introduce that evidence to show that the defendant had blocked leases under the Florida agreement, thereby undermining the plaintiff's efforts to obtain more than thirty-eight leases under the national agreement.

The court accurately assessed that Scotti's proposed testimony as to damages due to lost future profits was based on a *prediction* of future sales lost due to a breach of contract that used sales statistics that had not materialized as a predictor. The court properly excluded testimony that was not based on actual past

---

[6] "Where the trial court reaches a correct decision but on mistaken grounds, this court has repeatedly sustained the trial court's action if proper grounds exist to support it." (Internal quotation marks omitted.) *Kelley* v. *Bonney*, 221 Conn. 549, 592, 606 A.2d 693 (1992).

sales statistics. Testimony as to lost future profits based on sales that never happened is speculative, and the court acted within its discretion in excluding such testimony. Furthermore, the complaint did not allege any unfair practice in connection with the Florida and New England agreements, but confined the allegations to unfair practices in connection with the national agreement.

Next, the plaintiff claims that the court improperly disallowed the testimony of Walters. Walters testified that but for the defendant's interference, he would have negotiated through the plaintiff a master lease agreement and agreements for leasing space for personal communication services antennae on eighty-three of the defendant's properties. After the defendant objected, the court learned that Walters' testimony had not been disclosed properly pursuant to the defendant's pretrial discovery demand for any evidence of damages. Walters had not been deposed by the defendant, and the defendant had obtained no discovery from Omnipoint. As a result of the discovery violation and the fact that the damages Walters sought to describe had not been pleaded, the court instructed the jury to disregard Walters' testimony as to the number of leases that would have been generated under the various agreements between the plaintiff and the defendant.

"[T]he trial court has broad discretion in applying sanctions for failure to comply with discovery orders." (Internal quotation marks omitted.) *State* v. *Colon*, 71 Conn. App. 217, 241, 800 A.2d 1268, cert. denied, 261 Conn. 934, 806 A.2d 1067 (2002). *Colon* concerned the trial court's alleged failure to impose sanctions for a discovery violation. Id., 240. The decision to impose sanctions at all is certainly a matter within the court's discretion. Id., 241. The question, however, is when is a court justified in imposing sanctions for violations of discovery orders.

In order for a court's order of sanctions for violation of a discovery order to withstand scrutiny, three requirements must be met, which, on appeal, are subjected to different standards of review. First, the order must be sufficiently clear to allow for compliance. Second, the record must establish a violation of discovery rules. Finally, the sanction imposed must be proportional to the violation. *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 17–18, 776 A.2d 1115 (2001).

The first requirement, sufficient clarity, is reviewed de novo. Id., 17. The transcript reflects that both parties were aware of an informal order to provide an estimate of damages and information regarding the plaintiff's damages. To the extent that this element of the standard set forth in *Millbrook Owners Assn., Inc.*, is reviewable,[7] it is sufficiently clear that both parties concede knowledge and awareness of the order in question. The plaintiff made other disclosures on the basis of the alleged disclosure order. It appears that the order was sufficiently clear to guide the parties.

As to the requirement that the order was actually violated, we review the record and transcripts of the relevant proceedings to determine if the court was clearly erroneous in ruling as it did. See id., 17–18. After Walters' testimony was objected to by the defendant, the court heard from both parties outside the presence of the jury. The plaintiff claimed that it had not located Walters until just before he was scheduled to testify. The defendant objected to the testimony as a discovery violation, alleging that it had asked in interrogatories for all facts relating to damages and that those alleged damages were not disclosed. The plaintiff responded by stating that some electronic mail documents between

---

[7] The order allegedly was made at an unrecorded pretrial status conference. There is no record of the order.

Walters and Scotti had been disclosed. After hearing the arguments of both parties, the court found that the plaintiff may not have located Walters until just before calling him to testify. It further found, however, that some notice of his testimony could have been given, but it was not, in violation of the discovery order to reveal all facts and evidence of damages. Although the plaintiff may not have known the entire content of Walters' testimony prior to his being called, the court found that the plaintiff could have disclosed its knowledge of Walters' testimony about damages, to whatever extent known, prior to locating him.

The final requirement of the standard set forth in *Millbrook Owners Assn., Inc.*, which is that the sanction must be proportional to the discovery violation, is reviewed to determine if there was an abuse of discretion. Id., 18. The court decided that the actual number of leases projected by Walters to be signed was the only portion of his testimony that pertained directly to the issue of damages. The court, therefore, recalled the jurors and instructed them to "not consider any number of properties mentioned by Mr. Walters." The court's sanction reveals an effort by the court to balance the materiality of the evidence, the egregiousness of the discovery violation and the severity of the sanction. The court allowed the substance of Walters' testimony while excluding any specific evidence of the number of leases he projected would have been signed. The court's evidentiary rulings did not improperly limit the plaintiff's ability to support its claim for damages, and we affirm the rectitude of those rulings.

II

We next address the claim that the court improperly granted the defendant's motion for judgment notwith-

standing the verdict.[8] The standard of review applied to the rendering of judgment notwithstanding the verdict is the same as the standard of review for directed verdicts. *Gagne* v. *Vacarro*, 255 Conn. 390, 400, 766 A.2d 416 (2001). A reviewing court should sustain a directed verdict only if the evidence, construed in a light most favorable to the nonmoving party, reveals that a reasonable jury could not have come to a decision any different from that reached by the court. Id. The question is whether the verdict clearly was against the weight of the evidence, indicating that the jury did not apply the law correctly to the facts. *Schroeder* v. *Triangulum Associates*, 259 Conn. 325, 330, 789 A.2d 459 (2002). Directed verdicts are not favored in Connecticut jurisprudence. *Celentano* v. *Grudberg*, 76 Conn. App. 119, 123, 818 A.2d 841, cert. denied, 264 Conn. 904; 823 A.2d 1220 (2003). A verdict may be directed, however, when the decisive question is one of law or when the claim is that there is insufficient evidence to sustain a favorable verdict. Id. The defendant does not dispute liability, claiming instead that the plaintiff was entitled to nominal damages only. A defendant seeking to reduce or nullify a jury's award has the burden of proving that the verdict reflected damages to which the plaintiff was not entitled. See *Jones* v. *Kramer*, 267 Conn. 336, 349–50, 838 A.2d 170 (2003).

The court granted the defendant's claim for relief from the jury's award because it concluded that there

---

[8] The defendant filed a pleading titled "motions for judgment notwithstanding the verdict and/or for remittitur," claiming that the plaintiff was "only entitled to nominal damages . . . ." The court ruled that "the verdict in favor of the plaintiff is hereby set aside and the court enters judgment in favor of the plaintiff in the amount of one dollar." The court did not order a remittitur, which would have given the plaintiff the option of accepting the damages set by the court or having the verdict set aside and a new trial ordered. See General Statutes § 52-216a. Judgments notwithstanding the verdict ordinarily are rendered when there is no evidence from which a jury could find liability. See *Yeske* v. *Avon Old Farms School, Inc.*, 1 Conn. App. 195, 206, 470 A.2d 705 (1984). In this case, liability was conceded in the defendant's postverdict motions.

was insufficient properly admitted evidence to support the award. In evaluating the defendant's motion for judgment notwithstanding the verdict or for remittitur, the court, in its memorandum of decision, discussed the defendant's claim that Scotti's testimony should not have been admitted. The testimony in question was objected to by the defendant prior to trial by way of a motion in limine and during the trial on the ground that Scotti was not qualified as an expert. The court, however, allowed her to testify in the presence of the jury as to her conclusion that the plaintiff would have obtained thirty-eight contracts for the defendant, at an initial rate of $1250 per month with a 4 percent annual escalation, on which the plaintiff would have received a 30 percent commission for twenty years.

In its memorandum of decision, the court stated that it allowed the testimony "because preventing her from doing so essentially would have terminated the plaintiff's case, thereby requiring the parties to start from scratch in the trial process if the ruling prohibiting her testimony was later determined to be incorrect." The court stated that its evidentiary ruling as to Scotti's testimony was incorrect and that its incorrect ruling was one basis for the court's granting of the defendant's motion. The defendant acknowledges in its brief that the court in its memorandum revisited the evidentiary rulings and argues that the court's reconsideration in the defendant's favor must prevail unless the court has abused its discretion.

We first discuss whether a court may review the propriety of its rulings on evidentiary matters in deciding whether to grant a motion for judgment notwithstanding the verdict. A court may "set aside a verdict where it finds it has made, in its instructions, rulings on evidence, or otherwise in the course of the trial, a palpable error which was harmful to the proper disposition of the case and probably brought about a different

result in the verdict." (Internal quotation marks omitted.) *Bovat* v. *Waterbury*, 258 Conn. 574, 583, 783 A.2d 1001 (2001), quoting *Munson* v. *Atwood*, 108 Conn. 285, 288, 142 A. 737 (1928); see also *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 276–77, 828 A.2d 64 (2003); *Yeske* v. *Avon Old Farms School, Inc.*, 1 Conn. App. 195, 206, 470 A.2d 705 (1984).

The power to set aside a verdict is inherent and is "indispensable to the proper administration of justice, otherwise the court would be powerless to undo the wrong it had unintentionally done in the course of the trial although it had become aware of the error it had made in time to right the wrong." *Munson* v. *Atwood*, supra, 108 Conn. 288.

Although a court may set aside a verdict, on the basis of its appraisal of its evidentiary rulings during the trial or in its jury charge, the question remains as to the court's next step. In the present case, the court not only granted the defendant's motion, but rendered judgment for one dollar, wiping out a $1.35 million jury award for the plaintiff. The court did so by assessing the evidence to eliminate evidence it determined retrospectively should not have been considered by the jury. We have found no appellate case in which a court granted a motion to set aside a verdict on the basis of its belief that it had made a palpable evidentiary error and then, as a remedy, rendered what it considered to be the appropriate remedy rather than ordering a new trial as the remedy. The precise issue here is whether the court, in response to the motion to render judgment notwithstanding the verdict, may set aside the verdict, having concluded that it committed an evidentiary impropriety during the trial, and render the judgment it deems appropriate rather than order a new trial.

The standard for granting a motion to set aside a verdict is whether the jury reasonably and legally could

have reached the conclusion it did on the basis of the evidence it in fact had. The appellate standard of review for determining whether the court properly ordered a new trial on the basis of a postverdict analysis of evidentiary rulings during the trial is abuse of discretion. The former standard focuses on the action of the jury, and the latter focuses on the action of the court. We conclude that the remedy for the improper admission of causation evidence is the setting aside of the verdict and a new trial; *Maher* v. *Quest Diagnostics, Inc.*, 269 Conn. 154, 157 n.4, 847 A.2d 978 (2004); not a judgment of nominal damages. That is so because an evidentiary exclusion postverdict unfairly penalizes a party because its strategy, its ability to provide other evidence that might fill an evidentiary gap and its closing argument are affected when that party has lost the opportunity to modify or to correct its actions while the trial is ongoing. Whether Scotti's testimony was admissible ultimately is a question for appellate review, as the court recognized.

The setting aside of a verdict because of an error of the trial court should be exercised with great caution and never done unless the reviewing court is satisfied entirely that the error is unmistakable and unquestionably must have been harmful. *Jackiewicz* v. *United Illuminating Co.*, 106 Conn. 310, 311, 138 A. 151 (1927). In this case, the court undoubtedly believed that was the case. Our question for resolution, however, is whether the court was correct in its evidentiary rulings that were made during trial or in its postverdict assessment of those rulings.

If Scotti's testimony is eliminated or largely discounted, the jury could not have assessed the monetary value of the plaintiff's lost profits and the court's postverdict action to set aside the verdict would be proper. If Scotti's testimony that was heard by the jury should be considered in determining whether the jury award

should be upheld, then all of that evidence must be considered in determining if the verdict should have been reinstated.[9]

In *Card* v. *State*, 57 Conn. App. 134, 747 A.2d 32 (2000), the trial court's granting of a motion to set aside the verdict and ordering of a new trial was upheld on appeal. The trial court set aside the verdict after determining that there was no basis for a medical expert's conclusion about the cause of the plaintiff's injuries and that the conclusion therefore amounted to conjecture and surmise. Id., 137. The court had allowed the expert's conclusion to be considered by the jury. Id. That case, however, did not concern the rendering of a judgment notwithstanding the verdict or the setting aside of a verdict and the rendering of judgment in a dollar amount different from that decided by the jury. *Card* concerned the setting aside of a verdict and the ordering of a new trial. The basis for the appellate decision was the conclusion that the court properly had reconsidered the testimony in setting aside the verdict and ordering a new trial. In that case, we did not disturb the settled law that directed verdicts and judgments notwithstanding the verdict are to be tested on the basis of "the evidence before the jury . . . ." (Internal quotation marks omitted.) *Caprood* v. *Atlanta Casualty Co.*, 80 Conn. App. 338, 340, 835 A.2d 74 (2003); *Carusillo* v. *Associated Women's Health Specialists, P.C.*, 79 Conn. App. 649, 653, 831 A.2d 255 (2003); *Marchell* v. *Whelchel*, 66 Conn. App. 574, 582, 785 A.2d 253 (2001).

The court limited Scotti's trial testimony to that which would support the estimate of lost profits. Her testi-

---

[9] It is axiomatic that a trial court should not substitute its opinion for that of the jury as to factual questions and that the granting of a motion for judgment notwithstanding the verdict or the setting aside of a verdict cannot stand in such a situation. *Visoky* v. *Lavoie*, 64 Conn. App. 501, 504, 779 A.2d 1284 (2001); see *Caprood* v. *Atlanta Casualty Co.*, 80 Conn. App. 338, 340, 835 A.2d 74 (2003). This is not such a case.

mony, in the presence of the jury, as limited, included her method for finding damages as a result of lost profits. She used past successfully negotiated contracts under the New England and Florida agreements to achieve a number called a "penetration rate," which was loosely calculated by dividing the number of contracts negotiated by the plaintiff by the total number of the defendant's properties it managed under the New England and Florida agreements. She then estimated lost contracts under the national agreement by using the penetration rate to apply to the 3529 properties under the national agreement. Having found a penetration rate of 1.08 percent, Scotti testified that the plaintiff would have generated thirty-eight contracts. The actual amount of damages from those lost profits were calculated by other estimates, a $1250 average monthly rent per contract, escalation fees in successive years, an average twenty year term of each contract, the net present value of those contracts and other factors.[10] The validity of the figures, assuming Scotti's testimony to be accurate, was relied on in the testimony of other expert witnesses of the plaintiff.

We must determine whether Scotti was qualified to testify as to her opinion relative to the appropriate basis for finding the dollar amount of lost profits. Opinion evidence generally is inadmissible unless the witness is an expert. "If a witness is not testifying as an expert, the witness may not testify in the form of an opinion, unless the opinion is rationally based on the perception

---

[10] Scotti was not allowed to testify, in the presence of the jury, that the penetration rate would have been much higher but for the defendant's interference with the plaintiff's attempts to secure other contracts, specifically, properties under the Florida agreement. The plaintiff sought to prove that the penetration rate could have been much higher, but that the defendant, after sending notice to terminate, sabotaged the plaintiff's efforts to secure future contracts. The court disallowed much of Scotti's testimony as to the defendant's attempts to sabotage or to stymie the plaintiff's efforts to secure other contracts. That claim is discussed in part I.

of the witness and is helpful to a clear understanding of the testimony of the witness or the determination of a fact in issue." Conn. Code Evid. § 7-1. "Section 7-1 is based on the traditional rule that witnesses who did not testify as experts generally were required to limit their testimony to an account of the facts and, with but a few exceptions, could not state an opinion or conclusion. E.g., *Robinson* v. *Faulkner*, 163 Conn. 365, 371–72, 306 A.2d 857 (1972); *Stephanofsky* v. *Hill*, 136 Conn. 379, 382, 71 A.2d 560 (1950); *Sydleman* v. *Beckwith*, 43 Conn. 9, 11 (1875)." Conn. Code Evid. § 7-1, commentary.

The code of evidence allows opinion testimony by qualified experts. "A witness qualified as an expert by knowledge, skill, experience, training, education or otherwise may testify in the form of an opinion or otherwise concerning scientific, technical or other specialized knowledge, if the testimony will assist the trier of fact in understanding the evidence or in determining a fact in issue." Conn. Code Evid. § 7-2.

Section 7-2, therefore, allows expert opinion testimony if that testimony (1) is given by a person qualified due to their knowledge, skill, experience, training, education or otherwise, (2) is in an area of technical or other specialized knowledge and (3) is relevant. Id.; see also *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 62, 717 A.2d 724 (1998). The relevance of Scotti's testimony was not at issue. We need to determine if Scotti's qualifications allowed her to testify as an expert and whether the degree of scientific, technical or other specialized knowledge that she provided to the jury was too flimsy or minimal to allow her to express an opinion.

An expert has special knowledge directly applicable to the particular case that is not common to the average person and is helpful to the jury in considering the

issues. *Maher* v. *Quest Diagnostics, Inc.*, supra, 269 Conn. 167–68. The defendant points out that Scotti had only a high school diploma and some further secretarial training after high school. Education is not, however, the only means of attaining the necessary qualifications as an expert. An expert must simply evince knowledge on a subject that is significantly greater than that of persons lacking such education or experience. *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, supra, 247 Conn. 62; see also *Westport Taxi Service, Inc.* v. *Westport Transit District*, 235 Conn. 1, 34–35, 664 A.2d 719 (1995).

As the court correctly pointed out in its memorandum of decision, Scotti had no training in the field of statistics. Scotti utilized a statistical method of inferring lost profits by use of past, similar sales statistics by the plaintiff. A review of the statistical model applied by Scotti, however, shows that the portion of her testimony related to that model was not exceedingly difficult to comprehend. Her testimony was more about the anticipated number of contracts and their value—the value of damages due to breach, calculated in lost profits, than it was about statistical inference. Other experts testified about the validity of the statistical theory. Scotti's testimony pertained more to the value and experience of the plaintiff. As a director and office manager, she was uniquely qualified to testify as to that value and had personal knowledge of it. *Westport Taxi Service, Inc.* v. *Westport Transit District*, supra, 235 Conn. 35; see also *Cheryl Terry Enterprises, Ltd.* v. *Hartford*, 270 Conn. 619, 641, 854 A.2d 1066 (2004).

In its memorandum of decision, the court distinguished *Westport Taxi Service, Inc.*, from the present case, indicating that one of the two owners who testified in that case was more qualified than Scotti to give testimony concerning the value of the taxi service company because the owner testified as to value on the basis of

the profit history of the company, not on speculative future profits. We recognize the value of past data to provide a modicum of reliability to calculations based on future profits, but also recognize that damages related to future lost profits cannot be calculated with mathematical certainty. 3 Restatement (Second) Contracts § 352 (1981). Mathematical exactitude in proof often is impossible. *Lawson* v. *Whitey's Frame Shop*, 241 Conn. 678, 689–90, 697 A.2d 1137 (1997). Doubts as to exact amounts generally are resolved against the party in breach. 3 Restatement (Second), supra, § 352, comment (a); see also *Bead Chain Mfg. Co.* v. *Saxton Products, Inc.*, 183 Conn. 266, 278–79, 439 A.2d 314 (1981); *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, supra, 247 Conn. 91 (*Peters, J.*, dissenting).

We conclude that Scotti was qualified to testify as an expert about the lost profits of the plaintiff. The court correctly charged the jury that she was an expert.[11] We next determine whether Scotti's opinion testimony was sufficiently reliable to be allowed before the jury. The court has the discretion to exclude speculative evidence, expert or otherwise. *Heath* v. *Commissioner of Transportation*, 175 Conn. 384, 391–92, 398 A.2d 1192 (1978). The role of the judge as gatekeeper in weighing the reliability of expert testimony was stated by the United States Supreme Court in *Daubert* v. *Merrell Dow*

---

[11] Scotti was disclosed by the plaintiff as an expert witness pursuant to Practice Book § 13-4. The court in its charge described Scotti and Haut as experts, and correctly defined an expert witness as a person who, because of training, education, experience, skill or otherwise, has knowledge beyond that of an ordinary person. The court stated that the experts had given their opinions, which the jury could accept or reject, and that in deciding whether to accept or to reject those opinions, the jury should consider the experts' knowledge, education, training, skill or experience, and the information available to the experts, and the facts and documents or other evidence available to them, as well as their ability to recall and to assess the facts that formed the basis of their opinions.

*Pharmeceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and incorporated into the law of this state in *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998). In *Porter*, our Supreme Court restated the *Daubert* list of potential factors to be considered when the trial court properly is exercising its role as gatekeeper of the admissibility of scientific expert evidence.[12] Id., 64. Our question, however, is whether Scotti's opinion rested on scientific principles. If so, an analysis pursuant to *Porter* would be necessary. See *Maher* v. *Quest Diagnostics, Inc.*, supra, 269 Conn. 167.[13]

---

[12] *Daubert* and *Porter* purportedly apply only to *scientific* expert testimony, leaving open the question of whether the *Daubert* test should be applied to nonscientific expert testimony. That question was answered at the federal level by *Kumho Tire Co., Ltd.* v. *Carmichael*, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). In *Kumho Tire Co., Ltd.*, the United States Supreme Court decided that the trial court had the discretion to apply any one of the *Daubert* factors to nonscientific testimony in the same manner as in considering the admissibility of scientific based expert testimony, and stressed that the important point of *Daubert* was the weighing of factors and the discretion of the court, *not the mechanical application of the test.* Id., 152–53. The commentary to Connecticut Code of Evidence § 7-2 provides that Fed. R. Evid. 702 "should not be read either as including or precluding the [*Kumho Tire Co., Ltd.*] rule."

*Maher* v. *Quest Diagnostics, Inc.*, supra, 269 Conn. 173, established that what is to be considered as scientific must be assessed on a case-by-case basis.

[13] If an opinion rests on scientific principles, a trial court must weigh "(1) whether [the scientific theory] can be, and has been, tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error, including the existence and mainte-nance of standards controlling the technique's operation; and (4) whether the technique is, in fact, generally accepted in the relevant scientific commu-nity. . . . [T]he inquiry is a flexible one. Its overarching subject is the scientific validity—and thus the evidentiary relevance and reliability—of the principles that underlie a proposed submission." (Citation omitted; internal quotation marks omitted.) *State* v. *Porter*, supra, 241 Conn. 64. Evidence of that sort should be disqualified only when the methodology underlying such evidence is sufficiently invalid to render the evidence incapable of helping the finder of fact determine a fact in dispute. Id., 89. Concerns over the relatively dubious expertise of an expert pertain to credibility, not admissibil-ity. Id., 88–89 n.31.

Science is "[k]nowledge derived from study, observation, and experimentation and arranged for use in system and form. Study in a branch of knowledge conducted abstractly but also with observation and experimentation." Ballentine's Law Dictionary (3d Ed. 1969). Some "evidence with its roots in scientific principles, which is within the comprehension of the average juror and which allows the jury to make its own conclusions based on its independent powers of observation and physical comparison, and without heavy reliance upon the testimony of an expert witness, need not be considered 'scientific' in nature for the purposes of evidentiary admissibility." *Maher* v. *Quest Diagnostics, Inc.*, supra, 269 Conn. 170–71 n.22.

The plaintiff had the burden of establishing lost profits to a reasonable certainty. See *American General Corp.* v. *Continental Airlines Corp.*, 622 A.2d 1, 12 (Del. Ch. 1992). A damages award by a jury need not be nullified if the evidence affords a basis for a reasonable estimate by the trier of fact as to the amount due. *Lawson* v. *Whitey's Frame Shop*, supra, 241 Conn. 689–90. There can be little uncertainty over the application of the statistical theory posited by the plaintiff as a measure of damages. It was relatively simplistic and was well explained by the plaintiff's witnesses. This court, in fact, fails to see how one would need a trained statistician to testify as to its application. Scotti's testimony was "expert" in nature because she had experience in negotiating contracts and knew how the wireless communications technology and business worked, an experience unique from that of a layperson. Thus, her testimony was reliable, although she was not a statistician and the testimony was not scientific.

Because we conclude that the court was correct in its original rulings to admit Scotti's testimony, we must next determine whether, on the basis of Scotti's testimony as an expert, the jury could find that in combina-

tion with the testimony of Haut, the plaintiff had proved its damages for lost profits with reasonable certainty. The rectitude of the court's granting of the defendant's motion and the rendering of judgment for the plaintiff for one dollar must be evaluated on the basis of the evidence that the jury heard, not by eliminating evidence, which, according to the court, the jury should not have heard. Thus, we must evaluate the court's action in view of the evidence heard by the jury in a light most favorable to the plaintiff; *Gagne* v. *Vaccaro*, supra, 255 Conn. 400; with the burden of proving that the verdict reflected damages to which the plaintiff was not entitled, on the defendant. See *Jones* v. *Kramer*, supra, 267 Conn. 349–50. The question is whether, taking into account the evidence that the jury did hear, there was sufficient evidence of lost profits, including evidence of profitability and related expenses, to sustain a verdict in the amount the jury awarded the plaintiff.

Damages may be awarded on the basis of lost profits when the subject of the damages relates to an unestablished enterprise or if there is no other alternative in terms of the valuation of damages. *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, supra, 247 Conn. 63–64. A damages theory may be based on assumptions as long as those assumptions are reasonable in light of the record evidence. See *National Farmers' Organization, Inc.* v. *Associated Milk Producers, Inc.*, 850 F.2d 1286, 1301–1303 (8th Cir. 1988), cert. denied, 489 U.S. 1081, 109 S. Ct. 1535, 103 L. Ed. 2d 840 (1989). The reasonableness of those assumptions is to be determined by the trier of fact. *General Leaseways, Inc.* v. *National Truck Leasing Assn.*, 830 F.2d 716, 726–27 (7th Cir. 1987).

The key assumption here is that the plaintiff's success in securing contracts under the combined New England and Florida agreements was a valid indicator as to antic-

ipated success under the national agreement. The jury heard that in Scotti's opinion, the plaintiff would have generated thirty-eight leases at $1250 per month with a 4 percent annual escalation and that the average term of the leases would have been 21.74 years. It heard her estimates of the expenses of the plaintiff. It also had the testimony of Haut, who reviewed the expense assumptions of Scotti and her revenue estimates, and concluded that the calculated net present value of damages arising from the breach was $2,703,672.

We conclude that Scotti's testimony was sufficiently reliable to be before the jury properly and, on the basis of that testimony and the testimony of Haut, the jury, with reasonable certainty, could find damages in the amount of its award.

The judgment in favor of the plaintiff in the amount of one dollar is reversed and the case is remanded with direction to reinstate the verdict and to render judgment in favor of the plaintiff in the amount of $1,351,836.

In this opinion the other judges concurred.